UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW KLOTSCHE | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:13CV955 (CSH) |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, ET AL | : | |
| | : | |
| Defendants | : | MAY 29, 2014 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT YALE UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

The defendant, Yale University ("defendant"), has moved for summary judgment on the grounds that the plaintiff cannot prevail on his hybrid § 301/duty of fair representation claim because the evidence demonstrates that the defendant did not breach the collective bargaining agreement when it suspended the plaintiff for one day without pay. The evidence also demonstrates that the International Union, Security, Police and Fire Professionals of America, Local No. 502 ("the Union") did not breach its duty of fair representation.

**I.      Factual Background**

In his hybrid § 301/duty of fair representation claim, the plaintiff claims that the defendant, Yale University, breached the collective bargaining agreement when it suspended him for one day without pay because progressive discipline was not followed, the discipline was not for just cause, and the discipline was imposed in an arbitrary, capricious, and discriminatory manner. (Amended Complaint, at ¶¶ 7-8.) He further alleges that the Union breached its duty of fair representation by failing to timely file a grievance regarding the one

day suspension.  (Amended Complaint, at ¶ 12.)  In addition, the plaintiff asserts that, after the defendant denied the grievance as untimely and meritless, the Union accepted the defendant's position and abandoned the grievance.  (Amended Complaint, at ¶¶ 13-14.)

## II.     Legal Standard

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  If the party moving for summary judgment demonstrates the absence of any genuine issue as to a material fact, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Id.  A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and

"designat[ing] specific facts showing that there is a genuine issue for trial." (Internal quotations omitted.) Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

### III.  Argument

In order to prevail on a hybrid § 301/duty of fair representation claim, "a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." (Internal citations omitted.) White v. White Rose Food, 237 F.3d 174, 178 (2d Cir. 2001). To prove that the Union breached its duty of fair representation, the plaintiff must establish two elements:

> *First*, [he] must prove that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith. *Second*, [he] must demonstrate a causal connection between the union's wrongful conduct and [his] injuries. A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. Moreover, [t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach. A union's acts are discriminatory when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives. Bad faith, which encompasses fraud, dishonesty, and other intentionally misleading conduct, requires proof that the union acted with an improper intent, purpose, or motive.

(Internal quotations and citations omitted.) Vaughn v. Air Line Pilots, Ass'n, Int'l, 604 F.3d 703, 709-710 (2d Cir. 2010). The plaintiff in the instant case cannot establish either that the defendant breached the collective bargaining agreement or that the Union breached its duty of fair representation. Therefore, summary judgment should enter in favor of the defendant.

### A. The Defendant Did Not Breach the Collective Bargaining Agreement.

The plaintiff claims that the defendant breached the collective bargaining agreement when it suspended him for one day without pay because progressive discipline was not followed, the discipline was not for just cause, and the discipline was imposed in an arbitrary, capricious, and discriminatory manner.[1]

#### 1. Progressive Discipline was Followed.

Although the Amended Complaint alleges that the plaintiff had not been disciplined by the defendant in any manner prior to receiving the one day suspension without pay on February 21, 2013, (Amended Complaint, at ¶ 7), the plaintiff admitted that this allegation is inaccurate. (Depo. Andrew Klotsche April 9, 2014, at pp. 14-16.)[2] He had in fact received counseling and verbal warnings in the past. In 2009, the plaintiff was counseled for being in possession of the master set of keys to Pierson College in violation of departmental rules stating that security officers should not possess keys unless the keys were specifically needed. The plaintiff admitted that he was in possession of the master set of keys in violation of the rules. (Depo. Andrew Klotsche April 9, 2014, at pp. 16-18.) In December, 2010, Richard Nucci spoke to the plaintiff about his performance because he found the plaintiff reading textbooks and taking notes when he should have been working. The plaintiff admitted that he should have been working, and not studying, at that time because he did not call out on break. (Depo. Andrew

---

[1] The plaintiff alleges that the defendant denied his grievance on the grounds that it had no merit and was untimely. (Amended Complaint, at ¶ 13.) He does not allege that the defendant breached the collective bargaining agreement when it denied his grievance.

[2] Copies of relevant portions of the plaintiff's deposition transcript are attached to the Affidavit of Colleen Davis as Exhibit A.

4

Klotsche April 9, 2014, at pp. 18-20; Affidavit of Daniel Killen, at ¶ 20; Exhibit 8 to Affidavit of Daniel Killen.)  In April, 2011, the plaintiff was counseled about congregating with other security officers.  (Depo. Andrew Klotsche April 9, 2014, at pp. 53-54; Affidavit of Daniel Killen, at ¶ 21.)  In August, 2011, the plaintiff was counseled regarding proper bike attire.  (Depo. Andrew Klotsche April 9, 2014, at pp. 51-52; Affidavit of Daniel Killen, at ¶ 23; Exhibit 10 to Affidavit of Daniel Killen.)  In September, 2011, the plaintiff received a verbal warning because he was in the Law School when he should have been covering another area.  The plaintiff agreed that he was not supposed to be in the Law School at the time.  (Depo. Andrew Klotsche April 9, 2014, at pp. 10-13; Affidavit of Daniel Killen, at ¶¶ 22, 24-25; Exhibits 9, 11, 12 to the Affidavit of Daniel Killen.)  Thus, prior to receiving the one day suspension without pay in February, 2013, the plaintiff had been spoken to about his performance, received counseling on more than one occasion, and received a verbal warning.  Significantly, the plaintiff had been previously disciplined for the very same conduct in which he engaged on two separate dates in January, 2013. (Depo. Andrew Klotsche April 9, 2014, at pp. 23-24, 43.)

　　　　At his deposition, the plaintiff claimed that he should have been given a verbal warning on February 21, 2013 and that progressive discipline was not followed when he received the one day suspension without pay.  However, he acknowledged that he had previously received a verbal warning in September, 2011.  Therefore, he would have moved up to the next level of discipline, i.e. a written warning.  He further admitted that he was accused of violating the rules on two separate occasions in January, 2013, and could be disciplined separately for each

5

incident. In that case, he would have received a written warning for his conduct on January 9, 2011 and a suspension for his conduct on January 11, 2013. Given this disciplinary history, the plaintiff agreed that perhaps progressive discipline had been followed. He further acknowledged that the Union could have concluded that the one day suspension without pay was consistent with progressive discipline. (Depo. Andrew Klotsche April 9, 2014, at pp. 91-94.)

In light of the plaintiff's disciplinary history and his deposition testimony, the plaintiff cannot prove that the defendant failed to follow progressive discipline when he was given a one day suspension without pay on February 21, 2013.

### 2. The Discipline was for Just Cause.

The defendant had just cause to discipline the plaintiff on February 21, 2013. On January 9, 2013, the plaintiff's supervisors, Richard Nucci and Reginald Chavis, conducted post checks on several security officers, but could not locate the plaintiff. After approximately twenty minutes of searching, they observed the plaintiff in the basement of Branford College, sitting at a table with his jacket and duty belt removed. He had a textbook open and was writing on a pad. The supervisors then requested that another security officer retrieve the keys for Branford College. The keys were missing, and were later found in the plaintiff's possession, which was against department policy. When confronted by Mr. Chavis in the basement, the plaintiff indicated that he had conducted the tours of his colleges and had not been in the basement for more than twenty minutes. Mr. Chavis reminded the plaintiff that it was only two hours into the shift and the plaintiff had not called out for a break. He further

informed the plaintiff that his job was to be visible.  A short time later, the plaintiff spoke privately with Mr. Chavis, stating that Mr. Chavis had embarrassed the plaintiff when he called the plaintiff over the radio, that Mr. Chavis' tone was too harsh, and that the plaintiff's feelings were hurt.  When Mr. Chavis apologized, the plaintiff stated that he was not worried about being written up because he would only receive a counseling or written warning and would not be suspended without pay or fired.  Mr. Chavis responded that the plaintiff needed to improve his performance.  (Depo. Andrew Klotsche April 9, 2014, at pp. 25-31; Affidavit of Daniel Killen, at ¶¶ 3-6; Exhibits 1, 2 to Affidavit of Daniel Killen.)

Two days later, on January 11, 2013, Mr. Nucci conducted a quality assurance check on the plaintiff's post and could not locate the plaintiff.  He finally found the plaintiff in the subterranean area of Jonathan Edwards College.  The plaintiff was again in possession of keys to the college in violation of departmental rules.  The plaintiff was unresponsive to Mr. Nucci and, at one point, walked in the opposite direction of Mr. Nucci.  Mr. Nucci asked the plaintiff to accompany him to the street level and emphasized that the plaintiff was to provide a visible, uniformed security presence at the colleges.  (Depo. Andrew Klotsche April 9, 2014, at pp. 32-35; Affidavit of Daniel Killen, at ¶¶ 7-8; Exhibit 3 to Affidavit of Daniel Killen.)

On January 17, 2013, the Director of Security Operations, Daniel Killen, conducted an investigatory interview regarding the plaintiff's performance on January 9, 2013 and January 11, 2013.  During that interview, the plaintiff was not forthcoming with his responses.  He first stated that he was only inside the building to warm up.  The plaintiff only admitted that he had been reading a textbook and taking notes when Mr. Killen stated that the plaintiff had been

observed engaging in that conduct.  The plaintiff never explained why he was observed with his jacket and radio belt removed if he was in the building to warm up.  The plaintiff showed little remorse for his actions.  As to his conduct on January 11, 2013, the plaintiff stated that he was looking for a place to store his lunch.  Mr. Killen noted that the plaintiff had been assigned to the college for the past several months, and therefore should not have needed to look for a place to store his lunch.  The plaintiff claimed that Mr. Nucci was spying on him.  Mr. Killen then asked the plaintiff about carrying college keys.  The plaintiff acknowledged that he was aware that security officers were not supposed to carry the keys unless needed.  He further stated that he had been disciplined by a former manager for carrying keys.  Mr. Killen also questioned the plaintiff regarding his comment to Mr. Chavis that he was not concerned about being written up.  Mr. Killen noted that the comment indicated that the plaintiff did not understand the seriousness of his actions and that he was not taking responsibility for his behavior.  The plaintiff stated that the comment was made directly in response to possibly being disciplined for being in the basement on January 9, 2013.  (Depo. Andrew Klotsche April 9, 2014, at pp. 36-43; Affidavit of Daniel Killen, at ¶¶ 9-13; Exhibit 4 to Affidavit of Daniel Killen.)

In the span of three days, the plaintiff was twice observed inside buildings when he should have been patrolling the areas assigned to him and in possession of keys which he should not have had on his person.  The plaintiff admitted that he was aware in January, 2013, that studying while he should have been working and carrying keys to the colleges when the keys were not needed was against the defendant's rules.  He further acknowledged that he had

been disciplined in the past for engaging in the same conduct and that he again violated the rules on two separate occasions in January, 2013. (Depo. Andrew Klotsche April 9, 2014, at pp. 23-25, 43.) Given the plaintiff's conduct on January 9, 2013 and January 11, 2013, his cavalier response to the possibility of receiving discipline for his conduct on those dates, and his disciplinary history, the defendant was justified in suspending the plaintiff for one day without pay on February 21, 2013. The plaintiff testified at his deposition that he would have accepted a verbal warning for his conduct on January 9, 2013 and January 11, 2013. He simply believed that the one day suspension without pay was too harsh a punishment. (Depo. Andrew Klotsche April 9, 2014, at p. 47.) Accordingly, this action was brought to recover approximately $150 in lost pay.

    3. <u>The Discipline Was Not Imposed in an Arbitrary, Capricious, or Discriminatory Manner.</u>

As demonstrated by the plaintiff's conduct on January 9, 2013 and January 11, 2013, the plaintiff's response to the possibility of receiving discipline for his conduct on those dates, the results of the investigatory interview, and the plaintiff's disciplinary history, it is clear that the defendant did not impose the discipline in an arbitrary or capricious manner. In his deposition, the plaintiff testified that the defendant unfairly enforced the rules, claiming that other security officers had engaged in the same conduct which he had. While he claimed that several security officers had been in possession of keys for longer than the allotted time and had taken breaks without calling for a break within a three day period, the plaintiff did not know if they had been caught engaging in that misconduct or whether they had been disciplined. Similarly, he did not know if the supervisors were aware that the security officers

were violating the rules.  The plaintiff admitted that he had no evidence that the defendant treated him selectively.  (Depo. Andrew Klotsche April 9, 2014, at pp. 56-63.)  Following the January 17, 2014 investigatory interview, Mr. Killen spoke with Mr. Nucci and Mr. Chavis and neither was aware that security officers routinely carried college keys during their shifts in violation of department procedures.  (Exhibit 4 to Affidavit of Daniel Killen.)  Therefore, the plaintiff cannot establish that the discipline was imposed in a discriminatory manner.

Since the plaintiff cannot demonstrate that the defendant breached the collective bargaining agreement, he cannot prevail on his hybrid § 301/duty of fair representation claim. Therefore, the University's motion for summary judgment should be granted.

### B. The Union Did Not Breach Its Duty of Fair Representation.

The plaintiff claims that the Union breached its duty of fair representation by untimely filing the plaintiff's grievance and abandoning the grievance after the defendant denied it as untimely and without merit.  In order to prevail on this claim, the plaintiff must prove that the Union's actions or inactions were arbitrary, discriminatory, or in bad faith.  In addition, he must demonstrate a causal connection between the Union's wrongful conduct and his injuries. See, Vaughn v. Air Line Pilots, Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010).

In his Amended Complaint, the plaintiff alleges that the Union intentionally delayed filing the grievance until after the deadline for doing so had expired because the plaintiff was a candidate for the position of second shift union steward, had openly expressed his belief that the union was not properly representing its members, and was attempting to organize an effort to replace the union with another more responsive to the needs of its members.  (Amended

Complaint, at ¶¶ 10-12.) The plaintiff admitted that he did not have any evidence that his grievance was filed untimely because of his union activities. He did not speak with anyone in the Union about why the grievance was filed late and does not have any evidence indicating the reason for the late filing. (Depo. Andrew Klotsche April 9, 2014, at pp. 83-84, 94, 101-02.)

The plaintiff also cannot demonstrate a causal connection between the Union's alleged wrongful conduct and his alleged injuries. Although the defendant received the grievance after the period specified in the collective bargaining agreement, the defendant held a Step II hearing on the plaintiff's grievance and addressed the merits of his grievance. (Depo. Andrew Klotsche April 9, 2014, at pp. 47-48, 89-90; Exhibits 6, 7 to Affidavit of Daniel Killen.) After the defendant denied the plaintiff's grievance, the grievance was appealed to Step III and the plaintiff's grievance was discussed at a labor management meeting. Although the plaintiff wished to arbitrate his grievance, the Union decided that it would not pursue arbitration. The plaintiff agreed that the Union was not required to arbitrate every grievance and was allowed to exercise discretion in arbitrating grievances. He further agreed that the Union could have concluded that the grievance was not meritorious, which would have been a legitimate basis for not arbitrating the grievance. (Depo. Andrew Klotsche April 9, 2014, at pp. 87-90.) Since the defendant conducted a Step II hearing and the grievance was then advanced to Step III, the plaintiff cannot establish a causal connection between the untimely filing of the grievance and his alleged injuries.

Given the facts of this case, it cannot be said that the Union's decision not to bring this matter to arbitration was "so far outside a wide range of reasonableness as to be irrational." Vaughn v. Air Line Pilots, Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010).  As noted by the Second Circuit in that case, a union's actions can be regarded as discriminatory only when there is "substantial evidence" that the union engaged in "discrimination that was intentional, severe and unrelated to legitimate union objectives." Id.  The present plaintiff has produced no evidence to suggest that the Union's decision not to pursue arbitration meets this standard. Therefore, the plaintiff has failed to produce evidence to support a finding that the Union breached its duty of fair representation.  Since the plaintiff cannot demonstrate that the Union breached its duty of fair representation, he cannot prevail on his hybrid § 301/duty of fair representation claim.  Therefore, judgment should enter in favor of the defendant.

## IV.   Conclusion

The plaintiff cannot demonstrate either that Yale University breached the collective bargaining agreement or that the Union breached its duty of fair representation.  Therefore, he cannot prevail on his hybrid § 301/duty of fair representation claim and the defendant's motion for summary judgment should be granted.

                                                  THE DEFENDANT
                                                  YALE UNIVERSITY


BY:___/s/ Patrick M. Noonan  (#ct00189)___
      Patrick M. Noonan
      Colleen Noonan Davis
      Donahue, Durham & Noonan, P.C.
      741 Boston Post Road
      Guilford, CT 06437
      (203) 458-9168

## CERTIFICATION

     I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                                                        _____/s/_____
                                                             Patrick M. Noonan