## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

**ANDREW KLOTSCHE**

      **Plaintiff**

**vs.**                                                    **Civ 3:13-cv-0955 (RNC)**

**YALE UNIVERSITY AND INTERNATIONAL
UNION, SECURITY, POLICE AND FIRE
PROFESSIONALS OF AMERICA, Local
No. 502**

      **Defendants**
_____/

### DEFENDANT SPFPA LOCAL 502's SUPPLEMENTAL BRIEF

Defendant International Union, Security, Police and Fire Professionals of America, Local 502 submits the following Brief in response to the Court's January 27, 2017 order asking for supplemental briefing on whether and to what extent the CBA grants the employer discretion to bypass specific disciplinary steps, and whether it permits or prohibits the employer from treating each infraction separately. As this Supplemental Brief shows, Yale's administration of progressive discipline did not violate the CBA, and SPFPA's decision not to pursue Klotsche's grievance to arbitration did not violate its statutory duty of fair representation to Klotsche.

The CBA (attached in its entirety as Exhibit 1) contains no specific step-by-step procedure outlining how Yale must impose progressive discipline. Plaintiff's Amended Complaint accuses Yale's discipline of violating "Article 6, Sections 1 and 4, of the Collective Bargaining Agreement […] in that progressive discipline was not followed[.]" Doc. 17, par. 8. However, Art. 6 does not contain the cited provision and has nothing to do with discipline. Ex. 1, p. 7. Plaintiff appears to have intended to cite Art. 11. Id., pp. 11-12. Under Art. 11, Sec. 1.a, Yale may only discipline officers for just cause. Id., p. 11. Under Art. 11, Sec. 1.d, "[d]iscipline

older than eighteen (18) months does not serve as a basis for progressive discipline, except in cases of serious misconduct[.]" Id. This is the sole reference to the concept of progressive discipline in the entire CBA. The contract sets forth no definition of progressive discipline, does not specify each step in the progressive disciplinary process nor the time and manner in which the employer must apply it, nor does not dictate when the employer may find just cause to impose harsher discipline. Instead, Art. 11, Sec. 4 states that "[n]either the University nor the Union shall apply the provisions of this Agreement in an arbitrary, capricious or discriminatory manner."

This case stands in contrast to other cases where the CBA sets forth a more rigid disciplinary policy, such as *Mitchell v. N. Westchester Hosp.*, cited by this Court in its January 27, 2017 Entry Order. 171 F. Supp. 2d 274 (S.D.N.Y. 2001). In *Mitchell*, the four-step progressive disciplinary policy in question explicitly required that "each infraction is to be treated separately." *Id*. at 280. No such rigidity exists here.[1]

Yale's assessment of a one-day suspension upon Klotsche, after Klotsche committed what he acknowledged[2] to be multiple rules violations on both January 9 and 11, 2013, was wholly consistent with its obligations under the CBA. Following the verbal warning issued to Klotsche over misconduct he committed in 2011 (within the 18-month period allowing for it to be applied to later progressive discipline under Art. 11, Sec. 1.6), Klotsche described the next steps in Yale's progressive discipline as a written warning, followed by suspension for the next offense. Doc. 38. As a factual matter, Klotsche himself characterizes these as the correct steps in Yale's progressive disciplinary process. Doc. 38, Ex. 2, deposition transcripts, pp. 91-4.

---

[1] Nevertheless, in large part because the progressive disciplinary policy in *Mitchell* permitted the employer "to bypass progressive discipline steps for more serious infractions[,]" the Court upheld the employer's more severe penalty against the employee. *Id*. at 280-1.

[2] Doc. 38, Ex. 2, deposition transcripts, pp. 46-7.

Nevertheless, he argues that Yale did not adhere to this process. Id. Because Klotsche committed two separate instances of offenses on January 9 and 11, Yale assessed two levels of progressive discipline. Klotsche claims that Yale violated the CBA by administering discipline for both instances of his misconduct – which occurred two days apart – at the same time, and applying each instance as a separate progression of the progressive discipline policy, rather than advancing one step in progressive discipline for both instances. Id.

Plaintiff's argument is without merit. Yale's decision to apply two steps of progressive discipline as a result of Klotsche's two instances of misconduct on January 9 and 11 did not violate the CBA. As shown, the CBA does not set forth a rigid progressive disciplinary procedure, but rather makes only one passing reference to progressive discipline in Art. 11, Sec. 1.6. It otherwise gives Yale discretion to apply the CBA in a manner that is not "arbitrary, capricious or discriminatory[.]" Ex. 1, Art. 11, Sec. 4, p. 13.

SPFPA chose not to pursue Klotsche's grievance to arbitration, because an arbitrator almost certainly would have upheld Yale's assessment of the progressive discipline. Arbitrators generally refuse to impose a rigid structure of progressive discipline where the CBA and policy do not set forth such a structure, preferring instead to afford the employer some latitude in its assessment of discipline. 2 Norman Brand et al., *Discipline and Discharge in Arbitration*, 70 (2nd ed. 2008). As one arbitrator held, "[a] rigid system of progressive discipline is a creature of contract and, if the bargaining agreement is silent, one cannot be imposed by an arbitrator. *Tex-a-Panel Mfg. Co.*, 62 LA 272 (Ray, 1973). Exhibit 2. Absent that expression, only the Company's policy supports any type of progressive discipline." *Iten Indus.*, 122 LA 392, 401 (Szuter, 2005). Exhibit 3. In *Aro, Inc.*, 47 LA 1065, 1070 (Whyte, 1966) (Exhibit 4), another arbitrator elucidated this principle as follows:

While concepts of corrective (in contrast to punitive) discipline have merit, it is an arbitrator's function to interpret collective bargaining agreements, not advise company and union what should be in them. It is one thing to determine whether or not a contract permits discharging an employee under given circumstances. It is entirely another matter for an arbitrator to conclude that an employee's discharge violated a contract because of something not in the contract. The latter approach has the effect of rewriting the contract for the parties or, if not that, of adding something to the contract.

Like in the above arbitration decisions, the CBA in this case is silent on nearly all details of progressive discipline. An arbitrator would therefore refuse to implement a rigid progressive disciplinary structure outside of what is specified in the CBA. To do otherwise would not only add conditions outside of what the parties agreed upon, but would itself violate Art. 8.4.f of the CBA, which states that "[t]he arbitrator shall have no authority to add to, subtract from, or modify any provision of this Agreement." Ex. 1, p. 15. Imposing such extra-contractual conditions would have constituted a prohibited addition or modification to the CBA.[3]

Because Yale's actions did not violate any reasonable interpretation of the CBA, SPFPA's decision not to pursue the grievance to arbitration was not arbitrary, discriminatory, or in bad faith so as to violate its duty of fair representation to Klotsche.

Irrespective of the lack of a contractual basis and the lack of caselaw supporting Plaintiff's position, Plaintiff's theory of progressive discipline would yield unjust consequences if upheld. Yale assessed compounded discipline for Klotcshe's two separate instances of misconduct not out of a desire to subvert progressive discipline, but because Klotsche committed so much misconduct within a short period – once on January 9 and again on January 11 – that Yale did not have the opportunity to adequately investigate and administer the first disciplinary action before the next misconduct occurred. Doc. 39, par. 2. If Yale was forced to withhold

---

[3] In the analogous case of *Curtis Mathes Mfg. Co.*, the arbitrator ruled that he "is not authorized to devise his own system of progressive discipline for the Company. In fact, the Agreement between the parties so restricts the power of this arbitrator. 'The arbitrator shall not have any authority or power to add to, subtract from, or modify the terms of this Agreement or any agreement supplemental hereto.'" 74 LA 171, 175 (Goodstein, 1979). Exhibit 5. The operative language of this CBA is nearly identical to that in *Curtis Mathes Mfg. Co.*

discipline for multiple instances of misconduct committed in rapid succession, disobedient officers would be encouraged to commit further misconduct with impunity prior to Yale's administration of discipline. Moreover, Yale would be encouraged to administer discipline as quickly as possible, prior to a full investigation,[4] in order to avoid a potential compound discipline circumstance. The constraints to the normal due process of grievance investigation would be compromised in a way that hinders both Yale and SPFPA.

Respectfully submitted,

/s/Scott A. Brooks
Scott A. Brooks (MI P35773)
*Admitted Pro Hac Vice*
Gregory, Moore, Jeakle & Brooks, P.C.
65 Cadillac Square, Suite 3727
Detroit, MI  48226
(313) 964-5600
(313) 964-2125 fax
scott@unionlaw.net


Gregg D. Adler (ct05698)
Livingston, Adler, Pulda,
  Meiklejohn & Kelly, P.C.
557 Prospect Avenue
Hartford, CT  06105
(860) 233-9821;(860) 232-7818 fax
gdadler@lapm.org

Dated:  February 27, 2017


## CERTIFICATION

I hereby certify that, on February 27, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.

/s/ Scott A. Brooks

---

[4] In Klotsche's case, for example, Yale conducted its investigatory interview of Klotsche on January 17, 2013, over both the January 9 and 11 incidents of misconduct. Doc. 37, p. 3, par. 11.