L-502

# COLLECTIVE BARGAINING AGREEMENT

Between

## YALE UNIVERSITY

And

## INTERNATIONAL UNION,
## SECURITY, POLICE AND FIRE PROFESSIONALS OF AMERICA (SPFPA)

cc: Gordon, M. Crawford, Mary (New)

Effective: November 1, 2011 – January 18. 2015

SPFPA & YALE UNIVERSITY

| ARTICLE I. | UNION RECOGNITION | 1 |
|---|---|---|
| ARTICLE II. | MANAGEMENT RIGHTS | 1 |
| ARTICLE III | UNION AFFAIRS | 2 |
| ARTICLE IV | UNION BUSINESS LEAVE | 3 |
| ARTICLE V | RULES AND REGULATIONS | 4 |
| ARTICLE VI | EMPLOYEE CATEGORIES – DEFINITION OF EMPLOYEE | 4 |
| ARTCLE VII | DEFINITION OF SENIORITY | 4 |
| ARTICLE VII | PROBATIONARY PERIOD | 5 |
| ARTICLE IX | HOURS OF WORK | 6 |
| ARTICLE X | WAGES AND JOB CLASSIFICATIONS | 6 |
| ARTICLE XI | FAIR TREATMENT OF SECURITY OFFICERS | 8 |
| ARTICLE XII | OVERTIME | 9 |
| ARTICLE XIII | GRIEVANCE PROCEDURE | 10 |
| ARTICLE XIV | INTERNAL JOB POSTINGS AND POSITIONS | 12 |
| ARTICLE XV | LAYOFF AND RECALL | 13 |
| ARTICLE XVI | HEALTH AND SAFETY | 14 |
| ARTICLE XVII | HOLIDAYS | 14 |
| ARTICLE XVIII | PERSONAL BUSINESS DAYS | 16 |
| ARTICLE XIX | VACATIONS | 17 |
| ARTICLE XX | SICK LEAVE | 19 |
| ARTICLE XXI | LEAVES OF ABSENCE | 20 |
| ARTICLE XXII | DEATH IN THE FAMILY | 22 |
| ARTICLE XXIII | HEALTH INSURANCE | 23 |
| ARTICLE XXIV | RETIREMENT | 25 |

ARTICLE XXV      RETIREE HEALTH INSURANCE                                    26

ARTICLE XXVI     LIFE INSURANCE                                             27

ARTICLE XXVII    LONG TERM DISABILITY                                       28

ARTICLE XXIX     LICENSING                                                  28

ARTICLE XXX      UNIFORMS AND EQUIPMENT                                     29

ARTICLE XXXI     SCHOLARSHIP PROGRAM FOR SONS AND DAUGHTERS                 29

ARTICLE XXXII    EMPLOYEE ASSISTANCE PROGRAM                                30

ARTICLE XXXIII   JURY DUTY                                                  30

ARTICLE XXXIV    MORTGAGE LOAN PROGRAM                                      30

ARTICLE XXXV     TRAINING AND EDUCATION                                     30

ARTICLE XXXVI    NO STRIKE/NO LOCKOUT                                       31

ARTICLE XXXVII   DURATION OF AGREEMENT                                      31

LETTER 1         OVERTIME PROCEDURE                                         34

LETTER 2         SHIFT COORDINATOR PROGRAM (SCP)                            37

APPENDIX A       FMCS GRIEVANCE MEDIATION AGREEMENT                         33

APPENDIX B       HEALTH BENEFIT SCHEDULES                                   39

## ARTICLE I

**UNION RECOGNITION**

Section 1. Pursuant to the certification issued by the National Labor Relations Board dated  November 4, 2010 in NLRB Case No. 34-RC-2404, Yale University, hereinafter referred to as the University,  recognizes the International Union, Security, Police & Fire Professionals of America (SPFPA), hereinafter referred to as the Union, as the sole and exclusive representative for purposes of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment of the employees in the bargaining unit: All full-time and regular part-time Security Officers 1 and 2 and Central Alarm Station Operators employed by Yale University in its Security Department; but excluding all other employees, clerical workers, shift supervisors, lead officers, and managers, and professional employees and supervisors as defined in the National Labor Relations Act, as amended.

Section 2. The terms and provisions of the Agreement shall be binding upon the University and the Union and each employee in the bargaining unit described herein. The term "employee" is used in this Agreement to mean a University employee who is employed in the bargaining unit described above. This Agreement has no application to anyone who is not a member of the bargaining unit as described above.

Section 3. Neither the University nor the Union shall discriminate against any employee on account of race, religion, color, sex, marital status, national origin, veteran's status, sexual orientation, union membership or non-membership, or age.

## ARTICLE II
**MANAGEMENT RIGHTS**

Subject to the restrictions specifically imposed by the express language of this Agreement, Yale University and the Yale Security Department retain the exclusive and unilateral right to manage their operations, determine their policies, budget and operations, the manner of exercise of their functions and the direction of their work force, including but not limited to: the right to hire, promote, demote, transfer, evaluate, classify and assign employees; to discipline, suspend, and discharge employees; to layoff employees; to determine the size and composition of the work force; to promulgate and enforce rules of conduct, procedures, and regulations; to organize its departments and to determine work to be done therein; to determine the number of hours of work, starting and quitting times, and number of shifts per workweek; to establish and change work schedules and assignments; to determine types of uniform, equipment, and facilities; to introduce new methods of operations; to eliminate, contract, relocate, or transfer work; to promulgate standards of productivity and efficiency; and to enforce standards of competence and performance.

**ARTICLE III**
**UNION AFFAIRS**

Section 1.  An employee who is not a member of the Union at the time this Agreement becomes effective shall as a condition of continued employment, become a member of the Union within ten (10) days after the thirtieth (30th) day following the effective date of this Agreement or within ten (10) days after the thirtieth (30th) day following employment, whichever is later.  Also as a condition of continued employment, an employee shall remain a member of the Union, to the extent of paying an initiation fee and the membership dues uniformly required as a condition of acquiring or retaining membership in the Union, for the duration of this Agreement.

Employees meet the requirement of being members of the Union, within the meaning of this Article, by tendering the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership in the Union or, in the alternative, by tendering to the Union financial core fees and dues, as defined by the U.S. Supreme Court in NLRB v. General Motors Corporation, 373 U.S. 734 (1963) and Beck v. Communications Workers of America, 487 U.S. (1988).

In the event the Union requests the discharge of an employee for failure to comply with the provisions of this Article, it shall serve written notice on the Employer requesting that the employee be discharged effective no sooner than two (2) weeks after the date of that notice.  The notice shall also contain the reasons for discharge.  In the event the Union subsequently determines that the employee has remedied the default prior to the discharge date, the Union will notify the Employer and the employee, and the Employer will not be required to discharge that employee.

An employee shall not be required, as a condition of employment, to pay money to the Union, or to become a member of, or continue membership in, the Union, if he/she is employed in any state, in any location other than an enclave wherein exclusive federal jurisdiction applies, which prohibits or otherwise makes unlawful payment to a labor organization or membership in a labor organization as a condition of employment.

Section 2.  The Employer will deduct initiation fees, union dues and financial core fees from the wages of employees who voluntarily authorize the Employer to do so on a properly executed payroll deduction card.  Such deductions shall be made from the first paycheck of each month, or the first pay received in that month in which the employee has sufficient net earnings to cover the Union membership dues or payments.  Funds deducted with a monthly summary showing name, address, date of hire, hourly rate, dues or service fee paid or not paid, and employees who have been terminated or placed on leave of absence shall be remitted to the Secretary-Treasurer of the International Union, SPFPA within fifteen (15) days after the first regular payday of the month.

The Union will promptly furnish to the Employer a written schedule of the Union dues, initiation fees, and financial core fees.  The Union also agrees to promptly notify the Employer in writing of any changes to these amounts.  Union authorization cards must be submitted prior to the fifteenth (15th) of the month preceding the date that the deductions are to be made.

Section 3.  The University shall permit the reasonable use of University bulletin boards for the posting of Union notices subject to the following rules and regulations:

    a.  Locations of the bulletin boards will be established by mutual agreement.

    b.  The bulletin boards supplied will be locked with the Union's keys restricted to Executive Committee members who it will designate.

    c.  The content of bulletin board postings will be informational and non-confrontational in nature, and all postings must be submitted to the Director(s) or his/her designee for approval before posting.  Approval will not be denied for arbitrary or capricious reasons.

Section 4.  The rules and practices governing the use of alternate forms of communications shall be the same as those of other University unions.


**ARTICLE IV**
**UNION BUSINESS LEAVE**

Section 1. The Union may select two employee from each shift to be the Union Stewards representing such shift and may select an employee to serve as Chief Steward for the bargaining unit and an employee to serve as Secretary for the bargaining unit.

Section 2. The Chief Steward, the Union Steward and the grievant shall be granted leave from duty without loss of pay for attendance at grievance meetings pursuant to Article XIII (Grievance Procedures) of this Agreement.

Section 3. A Union Steward from a shift or the Chief Steward will be excused from duty without loss of pay if required to attend an investigatory interview pursuant to Article XI.

Section 4. No Steward shall engage in activities on behalf of the Union during the Steward's working time or interfere with the working time of any employee except as specifically authorized by the Agreement.

Section 5. Upon request by the Union to the Director, or his/her designee, the University will excuse employees from scheduled duty without pay for the purposes of Union business which is not inconsistent with the Agreement, such as Union conferences, training programs, and similar activities. Such excused time will not exceed a total of ten (10) days for the entire bargaining unit in any contract year and shall be limited to no more than two (2) employees from the bargaining unit at any one time, and no more than one (1) employee from any shift at any one time. The University will give reasonable consideration to any such proposed absence, provided that such request is made at least one week in advance, and if excusing such absence would not unreasonably interfere with performance of required work.

**ARTICLE V**
**RULES AND REGULATIONS**

Section 1. The University agrees to provide to the Union and all members of the bargaining unit up-to-date copies of all rules and regulations of the Yale University Security Department.

Section 2. Except as modified by this Agreement, all directives, rules, and regulations of the Yale University Security Department will remain in full force and effect subject to future modification and/or amendment pursuant to Article II (Management Rights).

**ARTICLE VI**
**Employee Categories – Definition of Employee**

1) The following employees are covered under the bargaining unit:

   a. Full-time employees are hired to work forty (40) hours, per week on a regular schedule and are eligible for benefits.

   b. Part-time employees are hired to work twenty (20) or more hours per week but less than forty (40) hours per week on a regular schedule and are eligible for benefits.

   c. Part-time, non-benefit eligible, employees, are hired to work at least eight (8) hours per week but less than twenty (20) hours per week on a regular schedule and are not eligible for benefits.

2) Casual employees are employed on a discontinuous, irregularly scheduled basis and are not members of the bargaining unit.

**ARTCLE VII**
**Definition of Seniority**

1. Seniority is a Employee's length of Service with the University, including both service since the Employee's most recent date of hire and periods of prior employment by the University as specified in paragraph 2 below. Seniority and the employment relationship shall terminate if the Employee:

   (i) Quits;

   (ii) Is discharged (for just cause in the case of a non-probationary Employee);

   (iii) Retires;

   (iv) Is laid off for eighteen (18) months;

(v) Fails to return, or make reasonable arrangements to return, from layoff within fourteen (14) days after the University has sent a notice of recall to the Employee's last address in the University's records; or

(vi) Fails to return to work, or make suitable other arrangements with the University, at the end of an approved leave of absence.

2.     For purposes of seniority and continuous service as those terms are used in this Agreement; for eligibility for layoff benefits, dental dependent coverage, and extra vacation days as provided by this Agreement; and for salary purposes under this Agreement, Employees shall be credited with the total of:

(i) All time worked in a permanent clerical and technical position since the most recent date of hire at Yale,

(ii) All time worked in a permanent clerical and technical position at Yale before, and including, any period of layoff of eighteen (18) months or less,

(iii) All time worked in a permanent clerical and technical position at Yale before, and including, any break for any reason other than discharge for cause of three (3) months or less,

(iv) One-half (1/2) of all time worked in a permanent clerical and technical position at Yale prior to any break other than those described in (ii) or (iii) above.

(v) All time worked prior to a break in seniority as a result of leaving the University for child-rearing, if the Employee returns to the University in accordance with Article XXI, Paragraph 4 of this Agreement.


**ARTICLE VIII**
**PROBATIONARY PERIOD**


Section 1:  A Security Officer who has never accrued seniority under this Agreement, or a Security Officer rehired after termination of seniority, shall be in "probationary" status.  Security Officers in a probationary status may be disciplined or discharged without recourse to the grievance procedure.  A new Security Officer shall be engaged on a probationary basis until the officer has completed one hundred and eighty (180) calendar days as a Security Officer since the  officer's most recent date of hire.

Section 2:  During this probationary period the University may terminate the employment of the Security Officer for any reason, and such termination may not be challenged through the Grievance procedure provided by this Agreement.  If an officer is not notified in writing of termination by one hundred and eightieth  (180) calendar day, the officer shall be deemed to have completed the probationary period.

**ARTICLE IX**

**Hours of Work**

1. The regular work week shall be forty (40) hours per week, eight (8) consecutive hours per day. Nothing in this Agreement shall be construed as a guarantee to any employee of any particular number of hours of work per week.

2. There shall be a paid thirty (30) minute lunch period included in any shift scheduled for seven and one half (7 ½) hours or more.  In some operations, this thirty (30) minute period may not be consecutive minutes.

3. There shall be a paid break of up to fifteen (15) minute for each four (4) hours of scheduled shift.

4. A shift premium of 5% will be paid for 2nd shift, and a shift premium of 7% will be paid for 3rd shift.  Shifts are defined by their starting time as follows:

    a.  1st shift          Starts between 6:00 am and 1:59 pm

    b.  2nd shift          Starts between 2:00 pm and 9:59 pm

    c.  3rd shift          Starts between 10:00 pm and 5:59 am.

5. An employee who is assigned to a shift other than his or her regular shift, either as an assignment change or by working beyond the end of the initially assigned shift, will be paid shift premiums appropriate to the hours so assigned, except that those actively employed in the bargaining unit as of the ratification of this agreement will receive shift premiums in the following manner:

    a.  An employee will be paid the greater of his regularly assigned shift premium or the premium of the shift assigned, whichever is greater.

    b.  An employee working beyond his or her regularly scheduled shift into another shift will be paid the shift premium for the hours worked on that shift or the premium for his or her regularly scheduled shift, whichever is greater.

**ARTICLE X**

**Wages and Job Classifications**

1. As of ratification of this Agreement, the position descriptions covering bargaining unit positions are:

    a)  Security Officer (SO)

   b)  Security Communications Officer (SCO)

2.  Employees on the active payroll as of the date of ratification of this Agreement will be red-circled at the rates currently in effect at that time.  Thereafter in January of each year of the Agreement they will receive an across the board increase  as follows:

   a)  January 15, 2012     2.5%

   b)  January 20, 2013     2.5%

   c)  January 19, 2014     2.5%

3.  Effective January 15, 2012, employees on the active payroll as of the date of ratification will receive a non-base-building lump sum salary adjustment of 3.5% of their pre-January 15, 2012 rate.

4.  Employees in the Security Officer position hired after the date of ratification will be hired at the starting rate of $15.00 per hour.  Thereafter, employees will receive annual increases for the duration of the Agreement per the following schedule, provided the employee has completed at least 26 weeks of employment in the bargaining unit at the time of the scheduled increase.

   a)  January 15, 2012     2.5%

   b)  January 20, 2013     2.5%

   c)  January 19, 2014     2.5%

5.  Employees in the Security Communications Officer position hired after the date of ratification will be hired at the starting rate of $17.00 per hour.  Upon completion of the certification requirements of the position, such employee will advance to the rate of $19.00 per hour upon the completion of one year of service in the position Unit.  Thereafter, employees will receive annual increases for the duration of the Agreement per the following schedule:

   a)  January 15, 2012     2.5%

   b)  January 20, 2013     2.5%

   c)  January 19, 2014     2.5%

An employee on the active payroll as of the date of ratification of this Agreement who is promoted from Security Officer to Security Communications Officer will receive a rate of either $17.00 per hour or a rate that is 12% above his or her previous rate, whichever is greater.  Upon completion of the certification requirements of the position, such employee, after one year of service in the position,  will advance to the rate of $19.00 per hour or a rate that is 12% above his or her previous rate, whichever is greater.  Thereafter, employees will receive annual increases for the duration of the Agreement per the above schedule.

6. Employees hired as Security Communications Officers are required to obtain the required certifications within one year of their hire date.

   a) Any employee failing to meet these requirements will be subject to layoff without notice for the purposes of the rights provided in Article XV, Section 6.

   b) Any employee who is promoted to SCO may within the first six (6) months of being assigned to the position resign and exercise his or her rights provided in Article XV, Section 6.

7. An employee who transfers for any reason to a lower graded position will receive a rate of pay commensurate with his or her rate of pay in the higher grade.


**ARTICLE XI**
**Fair Treatment of Security Officers**

Section 1.

   (a)      No non-probationary Security Officer may be disciplined or discharged except for just cause.

   (b)      Any grievance challenging disciplinary action taken by the University involving suspension or discharge shall be filed in writing at Step 2 of the Grievance Procedure provided by this Agreement within ten (10) days after the University's action.

   (c)      A Security Officer who is absent from work for five (5) or more consecutive working days without notifying his or her Supervisor shall be deemed to have voluntarily resigned his or her employment with the University, except in unusual circumstances.

   (d)   Discipline older than eighteen (18) months does not serve as a basis for progressive discipline, except in cases of serious misconduct, including but not limited to sexual harassment or violence in the workplace.

Section 2.

   (a)      Neither the University nor the Union shall discriminate against any Security Officer on account of race, religion, color, sex, marital status, national origin, veteran status, sexual orientation, union membership, union activity which does not violate this Agreement, or other individual beliefs or activities of a Security Officer which do not affect the performance of work by the Security Officer or other University personnel.

   (b)      Neither the University nor the Union shall discriminate against any Security Officer in violation of applicable law on account of the Security Officer's age or disability.

(c)      The University shall make reasonable accommodation for Security Officers with disabilities who are otherwise qualified to perform the required work.

Section 3.

(a)      Sexual harassment is contrary to University policy, and the University will take appropriate steps in connection with any sexual harassment by any University employee or student.

(b)      If a Security Officer or the Union believes that a Security Officer is experiencing sexual harassment by a University employee, the matter shall be brought to the University's attention by either filing a grievance under the Grievance Procedure provided by this Agreement, at whatever step the Security Officer or the Union considers appropriate, by notifying the Department of Human Resources or by notifying the Director of the Office of Equal Opportunity Programs.

(c)      If a Security Officer or the Union believes that a Security Officer is experiencing sexual harassment by a University student, the matter shall be brought to the University's attention by notifying the Director of Equal Opportunity Programs. If the Security Officer or the Union does not think the Director of Equal Opportunity Programs has taken appropriate steps in the situation, the Security Officer or the Union may file a grievance under the Grievance Procedure provided by this Agreement at whatever step the Security Officer or the Union considers appropriate.

Section 4.      Neither the University nor the Union shall apply the provisions of this Agreement in an arbitrary, capricious or discriminatory manner.

**ARTICLE XII**
**OVERTIME**
Section 1. All overtime duty shall be paid at the rate of time and one-half for all hours worked in excess of 40 hours per week.

Section 2. When an employee is required to return to duty to perform overtime duties, and when the overtime hours so worked are not contiguous with said employee's regular duty hours, he/she shall be paid not less than four (4) hours pay at the applicable rate unless other arrangements are made in advance of the assignment.  Overtime pay shall not be subject to the minimum hour provisions when such overtime results from extending a tour of duty on any shift.

Section 3. For the purpose of computing overtime, all paid time shall be considered worked time.

Section 4. Insofar as practicable, all overtime opportunities shall be distributed equitably to all employees without regard to seniority as measured in each calendar quarter.

Section 5. Compensation shall not be paid more than once for the same hours under any provision of this Article or Agreement.

Section 6. The University agrees not to arbitrarily change an employee's normal work schedule for the specific purpose of avoiding the payment of overtime (e.g., reducing hours of work in one day because of overtime worked in another).


**ARTICLE XIII**
**GRIEVANCE PROCEDURE**

1.  A grievance, for the purposes of this Article, is a claim that the University has violated this Agreement.

2.  Grievances shall be handled in the following manner:

    Step 1. The affected employee, with or without his/her Steward, shall promptly discuss the grievance with his/her immediate supervisor. The supervisor may have present a representative of the University's Department of Human Resources if the supervisor desires. If the grievance is not settled, the grievant may reduce the grievance to writing. The written grievance must include:

    a.  Name of the grievant;

    b.  Date of the incident complained of;

    c.  Section of the Agreement allegedly violated;

    d.  The facts which constitute the wrong complained of; and

    e.  The relief sought.

    The supervisor will provide a written answer to the grievant within seven (7) days of receipt of the written grievance.

    Step 2. If the grievance is not resolved at Step 1, the employee may file a written grievance with the Director, or his/her designee, within fourteen (14) days after the receipt of the first step response. The written grievance must include the same information described in Step 1.

    Within seven (7) days after receipt of the written grievance, the Director, or his/her designee, and a representative of the University's Department of Human Resources shall meet with the grievant and the Union Steward to discuss the grievance, and the Director, or his/her designee, shall provide a written response to the grievant within seven (7) days of this meeting.

    Step 3. If the grievance is not resolved at Step 2, the Union may appeal the grievance to Step 3 by giving a written notice of such appeal to the University's Vice President for Human Resources, or his/her designee, within seven (7) days of the written response from Step 2. The Vice President for Human Resources, or his/her designee, shall meet with the grievant, the Steward, and an Officer of

the Union to discuss the grievance within fourteen (14) days of the Union's appeal to Step 3, and shall give the Union a written answer to the grievance within seven (7) days after such meeting.

Step 4.  If the grievance is not resolved at Step 3, the Union may appeal the grievance to arbitration by giving written notice of such appeal to the University's Vice President for Human Resources, or his/her designee, within fourteen (14) days of the written response from Step 3.

3.   The Union  and the University will employ a mediation process on a case-by-case
basis when they mutually agree to do so, to take place after Step 3 but before any Arbitration Hearing in Step 4 of the Grievance Procedure.  The process to be employed is the one outlined by the Federal Mediation and Conciliation Service (FMCS) in the "Mediation Agreement" described in Appendix A of this Agreement.  It is understood that the required "Mediation Agreement" as referenced may change from time to time as the FMCS may deem necessary and that any such changes will be incorporated in this Agreement as a modification to Appendix A.

4.  Grievances appealed to arbitration shall be handled in the following manner:

(a)  When a grievance is appealed to arbitration, the parties shall request a panel of arbitrators from the Federal Mediation and Conciliation Service within ten (10) days after receipt of written notice provided in Step 4 above. Either party may reject the first panel of arbitrators in its entirety and request a second panel of arbitrators within seven (7) days of the receipt of the first panel.  From the panel to be used each party shall alternately strike, and the name remaining shall be the arbitrator for the grievance. The party to strike first from the panel shall be decided by coin flip.

(b)  Hearings shall be held on campus at a mutually agreed time.

(c)  Any briefs to be filed shall be filed within fourteen (14) days after the end of the hearing.

(d)  Each party shall bear the expenses of its representatives and witnesses. The University shall grant unpaid release time for Union witnesses, subject to operational considerations, when such witnesses are working their normal work shift.

(e)  The parties shall split the fees and expenses of the arbitrator and the costs, if any, of the hearing facilities.

(f)  The arbitrator shall have no authority to add to, subtract from, or modify any provision of this Agreement.  The award of the arbitrator shall be final and binding on these parties.

(g)  Nothing herein shall prevent the parties from mutually agreeing upon an arbitrator.

(h)  Either party may request that a stenographic record be kept of the arbitration proceeding, and absent any prior agreement to the contrary, the requesting party will bear the cost of providing such record.  Copies of the stenographic record must be provided to the Arbitrator and the opposing party

5.     When the University fails to render a decision within the time limits specified in the Grievance Procedure, the Union may proceed to the next step of the Grievance Procedure.

6.     Time limit extensions beyond those stipulated in the Grievance Procedure may be arrived at by mutual agreement of both parties concerned and in writing.

7.     The Union shall be entitled to submit grievances in the name of the Union concerning violations of this Agreement.

8.     A grievance affecting more than one (1) employee or a class of employees may initially be presented by the Union at Step 2, subject to the time limits that apply to that step.  In processing such grievance through the procedure, one grievant shall represent the class of employees identified as grievants. Grievances regarding disciplinary suspension or termination, and/or other actions taken by the Director, may be filed initially to Step 2.

9.     Any grievance not grieved in writing within twenty-eight (28) days from the date the grievant or a Union representative or Steward knew or through reasonable diligence should have known of the first occurrence of the event or condition giving rise to the grievance shall be waived, except that grievances filed regarding disciplinary action must be filed within fourteen (14) days of the employee having been notified of the disciplinary action.

10.     This Grievance Procedure shall not prevent any employee from dealing directly with a supervisor concerning any problem, provided that no grievance can be settled without the Union's consent.

11.     For the purposes of this Agreement, days shall mean calendar days, unless otherwise specified.

**ARTICLE XIV**

**Internal Job Postings and Positions**

1. For the purpose of promotions and transfers under this Agreement, positions will be identified by their job description and scheduled hours.  The University will post new positions as it determines is necessary.

   a. When a job opening (other than a temporary opening) in a position covered by this Agreement is posted, it shall be identified by job description, schedule of hours, initial shift and initial location of assignment, and a brief description of the job's general duties and responsibilities.

   b. The job opening will be posted for a minimum of fourteen (14) calendar days on the University's electronic posting system.

2. Once in a position as described above, the employee may be transferred to another shift provided the schedule of hours is not reduced.

3. Employees are limited on the bidding for new positions as follows:

   a.  There is no limit on the frequency an employee may successfully bid on a position deemed to be a promotion. A promotion is defined as:

       i.  A position in a higher grade;

      ii.  A position scheduled for at least 5 more hours per week than the incumbent's current assignment.

   b.  Other bidding for new positions would be limited to one successful bid in a rolling calendar year. These would include:

       i.  Positions simply on a different shift or daily schedule only; or,

      ii.  Positions with a change of less than 5 hours per week.

     iii.  Lateral positions at a different location.

   c.  An employee who has been disciplined within a year of the posting at the level of a written warning or greater will be ineligible for bidding.

4. Selections for positions are at the discretion of the University based on the following:

   a.  Most qualified candidate, either internal or external.

   b.  Re: internal v. internal – Unless there are significant differences in skills, qualification or experience, the more senior candidate is selected.

   c.  Re: internal v. external - Unless there are significant differences in skills, qualification or experience, the internal candidate is selected.

**ARTICLE XV**

**LAYOFF AND RECALL**

1. The University shall have sole discretion to determine the need for and type, number, and location of positions to be eliminated.  The following provisions apply to benefits-eligible employees only.

2. In cases of less than ten (10) years of service, employees shall receive written notification at least thirty (30) calendar days prior to the effective date of the layoff.  In cases of ten (10) or more years of service, employees shall receive written notification of layoff at least sixty (60) calendar days prior to the date of layoff.  The University may elect to continue the pay and benefits of an employee for the periods described above in lieu of all or part of the notice.

3. When the Department identifies a position to be eliminated, the incumbent in that position will be the first affected and will be eligible to transfer to open positions in the same classification, weekly

schedule of hours and labor grade or to displace a less senior employee in the same classification subject to the following sequence:

    a.  The affected employee will displace the least senior employee whose regularly scheduled hours are the same as the affected employee.

    b.  If there is no employee junior to the affected employee whose regularly scheduled hours are the same as the affected employee, the affected employee will displace the least senior employee whose regularly scheduled hours are less than those of the affected employee but greater than those of an employee with the next shorter regular schedule.

    c.  If by following the above rules the affected employee has no opportunity to displace a less senior employee, the affected employee shall be laid off.

    d.  The above process will be repeated for each employee affected or subsequently affected by being displaced by a senior employee.

    e.  An affected employee will be ineligible to displace a less senior employee and will be laid off if he or she does not have the ability to perform the work of the employee who would otherwise be displaced.

    f.  An affected employee shall have the option of:

        i.  accepting layoff in lieu of accepting the opportunity to displace a less senior employee, or;

        ii.  accepting a transfer to an open position in a lower grade and/or a lower schedule of hours.

4.  If an employee notified of layoff as described above has not had the opportunity to be placed in a regular position in the same or higher labor grade and at no less than the same number of weekly hours by the end of the notice period stated above, the laid-off employee's salary and all benefits will be continued after such notice period for the number of weeks equal to the Staff Member's completed full years of continuous service at the University. This continued salary is in addition to any terminal vacation pay to which the Staff Member may be entitled.

5.  If an employee notified of layoff as described above has not had the opportunity to be placed in a regular position in the same or higher labor grade and at no less than the same number of weekly hours by the end of the period of continued salary provided by 4, above, the Employee's medical insurance coverage shall be continued for the number of months equal to the Employee's completed years of continuous service at the University as of the effective date of the layoff, up to a maximum of six (6) months (which six-month period shall include any period for which salary is continued pursuant to 4, above).

SPFPA & YALE UNIVERSITY

6.  Employees laid off will retain rights to return to a position in the unit without a break in service for 18 months from the date of layoff.  Such employees may exercise this right by applying for available positions that become available.  Such laid off employees will be given priority for selection for these positions provided they have the ability to perform the work, and selections will be made on the basis of the greatest seniority of those who apply.

7.  The employees selected as Chief Steward and Secretary pursuant to Article IV of this Agreement will be considered to have the greatest seniority in the bargaining unit for the purpose of applying the layoff provisions of Article XV.

## ARTICLE XVI

### HEALTH AND SAFETY

The departments shall continue to comply with all applicable federal and state occupational health and safety laws for the protection of the health and safety of the employee. Employees shall comply with safety rules established by the University. Job related OSHA familiarization and training will be provided as necessary.

## ARTICLE XVII

### Holidays

1.  Each Benefits Eligible Employee, who works or does not work on a University holiday or recess day, shall receive, in addition to pay received for time actually worked (if any), pay for the holiday or recess day equal to the straight-time hours the Employee otherwise would have worked on such day.

2.  The University holidays are: New Year's Day, Dr. Martin Luther King, Jr. Day, Memorial Day, Good Friday, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, or the day observed by the University as the holiday. If a holiday falls on Saturday, it will be observed on the preceding Friday; if a holiday falls on a Sunday, it will be observed on the following Monday.

3.  The University recess days are the Friday after Thanksgiving, the last day (excluding Saturday and Sunday) before the day observed as the Christmas Day holiday and the four (4) days (excluding Saturday and Sunday) which fall between the Christmas Day and New Year's Day holidays.

4.  An employee on layoff or leave of absence shall not be eligible for pay for an unworked holiday or recess day.  An employee on a leave of absence shall be eligible for pay for a holiday or recess day if

the Employee is receiving pay from sick, vacation or personal time when the holiday or recess day occurs, provided that the payment of such time has been continuous from the start of the leave.

5.   Scheduled Work on Holidays and Recess Days

    a.   If an employee is required to work on a holiday or recess day, the Employee shall receive any holiday or recess day pay for which the Employee is eligible under this Article for the holiday or recess day involved, plus either pay or, if the Employee and the Employee's Supervisor agree on the scheduling of compensatory time, compensatory time off, at the rate of one and one-half (1 1/2) hours for each hour worked. The Employee's request to scheduling of compensatory time shall not be unreasonably denied by the Supervisor, bearing in mind the operational needs of the department. However, compensatory time off may not be granted for any hours worked by the Employee in excess of forty (40) in the workweek involved. If compensatory time off is provided, such time must be taken by the June 30 following the holiday or recess day involved or be forfeited. For purposes of this paragraph, the holiday or recess day shall be the twenty-four (24) hours beginning at 12:01 a.m. on the holiday or recess day.

    b.   For Employees first employed on or after July 1, 2009, in lieu of the premium compensation provisions described above as they apply to recess days, Departments may designate any recess day as a normal work day by providing notice to the affected employee(s) at least thirty (30) days in advance of the regularly designated recess day.  An employee assigned as such will receive an equivalent floating holiday that can be used at a time mutually agreeable between the Supervisor and the Employee within the same fiscal year.  The Employee's request to scheduling the floating holiday shall not be unreasonably denied by the Supervisor, bearing in mind the operational needs of the department.


**Article XVIII**

**Personal Business Days**

1.   Each non-probationary Benefits Eligible Employee employed prior to July 1, 2009 may take personal time and receive pay for straight-time hours not worked while on such personal time for up to four (4) days of absence during each University fiscal year.

2.   An employee may use personal time in hours or days.

3.   An employee must give his or her Supervisor as much advance notice of the desired personal time as is practicable. Requests for use of personal business days shall not be denied arbitrarily or capriciously.

4.   A day, for purposes of this Article, is the number of hours determined by dividing the Employee's scheduled hours of straight-time work in a normal two (2) week period by ten (10).

5.      Personal time may not be used to extend a vacation, except by mutual agreement of the Employee and the Employee's Supervisor.


**ARTICLE XIX**

**Vacations**

1.      Each Benefits Eligible Employee shall be entitled to vacation with pay at the Employee's straight-time hourly rate to the extent provided by paragraphs 2, 3, 4 and 6.  An employee shall not be eligible to take paid vacation until the Employee has completed six (6) months of service.

2.      An employee hired on or after July 1, 2009 regularly scheduled for twenty (20) or more hours per week shall be entitled to vacation and vacation pay in each fiscal year as defined herein.

   (a) Vacation Service Allotment. An employee's vacation service allotment shall be determined on the basis of his or her years of service as of the end of any fiscal year as follows:

| Continuous Years of Service as of the end of the FY | Vacation Service Allotment |
|---|---|
| Less than 1 | Pro rata share of two (2) weeks as per 2(b) |
| 1 to 4 | 2 weeks |
| 5 to 9 | 3 weeks |
| 10 to 19 | 4 weeks |
| 20 or more | 5 weeks |

(b) Vacation Share. An employee who has not completed one full year of service as of the end of any fiscal year shall earn a 1/12th share of his or her vacation service allotment for each month in which he or she has worked at least 50% of the available work days. The vacation shares so earned may be used in the fiscal year in which they are earned.

3.      For each month in which an employee hired on or after February 1, 1997 but before July 1, 2009 is actively employed, the Employee shall accrue one (1) day of vacation during the first two (2) years of employment, each day to equal the Employee's daily straight-time hours during the month, except that in the first and final months of an employee's employment the Employee shall accrue no vacation if the Employee does not actually work at least ten (10) days.

4.      For each month in which an employee who has completed two (2) years of service before July 1, 2009 and is actively employed, the Employee shall accrue two (2) days of vacation, each day to equal the Employee's normally scheduled daily straight-time hours during the month, except that in the first and final month of an employee's employment the Employee shall accrue no vacation if the Employee does not actually work at least ten (10) days, and only one (1) day if the Employee works ten (10) but less than twenty (20) days in such month.

An employee may not accrue more than twenty-two (22) days of vacation in any University fiscal year (July 1  - June 30). An employee shall not accrue any vacation for any month during which the Employee was on layoff, unless the Employee actually worked at least ten (10) days during the month.

5.     An employee may utilize his or her accrued vacation at the time desired by the Employee so far as possible. The Employee's Supervisor may not deny a vacation request arbitrarily or capriciously.

Except as provided below in this section, accrued vacation time must be used by June 30 of the fiscal year after the fiscal year during which it was earned.

An employee hired on or after July 1, 2009 may carry forward up to two (2) years' worth of vacation to the next fiscal year.  An employee hired before July 1, 2009 may accumulate up to twenty-two (22) additional days of unused vacation, in addition to vacation accrued during the current or previous fiscal year. In addition, an employee hired before July 1, 2009 who has completed ten (10) years or more of continuous service may also accumulate an additional five (5) unused days per year, to a total additional maximum of twenty (20) days.

All vacation accrued and accumulated in accordance with this Section may be used by an employee in accordance with the vacation scheduling provision of this Agreement. Accumulated vacation time may not be waived for extra pay, but all such accumulated unused time shall be paid to an employee who terminates, in accordance with the terminal vacation provisions of this Agreement.

6.     Upon completing the years of service stated in the following schedule, an employee employed prior to July 1, 2009 will be eligible to take, once during the five (5) years following the Employee's becoming eligible for such extra vacation days, the number of extra vacation days stated, in addition to the Employee's accrued regular vacation days:

| Years of Service Completed | Extra Vacation Days |
| --- | --- |
| 15 years total | 5 work days |
| 20 years total | 10 work days |
| 25 years total | 20 work days |
| 30 years total | 25 work days |
| 35 years total | 30 work days |
| 40 years total | 35 work days |
| 45 years total | 40 work days |
| 50 years total | 45 work days |

7.	An employee who has completed at least six (6) months of service and who either resigns from the University or is terminated by the University shall be paid for any unused and unforfeited vacation time.

8.	Upon the Employee's request, vacation pay shall be paid to an employee prior to the start of the vacation.


## ARTICLE XX

**Sick Leave**

1.	A non-probationary Benefits Eligible Employee required to be absent from work because of the employee's illness or injury shall be entitled to sick leave with pay for the straight-time hours not worked by the employee due to such illness or injury to the extent of the employee's sick leave allowance.

2.	An employee's sick leave allowance shall be twelve (12) days per fiscal year, except that for the fiscal year in which the employee is hired, the employee's sick leave allowance shall be one (1) day for each month in which the Employee has worked. Sick leave unused in any fiscal year may be carried forward to succeeding fiscal years, up to a maximum accumulation of two hundred four (204) days for employees hired before July 1, 2009, and two thousand seven hundred fifty two (2,752) hours for employees hired on or after July 1, 2009.

3.	An employee required to be absent due to illness or injury must notify his or her Supervisor at the commencement of such absence and thereafter as is reasonably required by the Supervisor during the duration of the absence, unless the employee's condition prevents giving such notification.

4.	In cases of suspected malingering the University may require evidence of an employee's illness or injury or a medical examination by the University before payment for sick leave is given.

5.	The University may require, at its expense, evidence of an employee's health status or a medical examination of the Employee by the University prior to an employee's return to work from major surgery, contagious infection, or protracted or serious illness or injury.

6.	Sick leave may be used in hours or days. A day, for purposes of this Article, is the number of hours determined by dividing the Employee's scheduled hours of straight-time work in a normal one (1) week period by five (5).

7.	An employee shall be advised in writing at least once annually of the Employee's unused accumulated sick leave days.

8.	If an employee with a least one (1) year of service dies while on the active payroll of the University, the Employee's beneficiary designated to receive the payment provided by Article XXVI (Life

Insurance) shall be paid any unused accumulated sick leave pay which would have been payable to the Employee if the death had not occurred.

9.        Retirement.  An Employee retiring on or after January 20, 2008 will be paid out 50% of the Employee's accumulated sick time at retirement and the 50% balance will be applied toward the Employee's years of service as specified below.  Such retiring Employee shall receive additional pension service credit for the amount of calendar time covered by working days equal to the balance of accumulated unused sick leave days that the Employee may have.  An employee who terminates while vested and begins immediately to collect a pension benefit from Yale may either retire earlier than otherwise by an amount of time equal to the sick leave credit provided in this paragraph, and begin immediately to collect a pension in the same amount that the employee would otherwise have received if retiring at the scheduled time, or may retire at the scheduled time and receive additional service credit based upon the additional credit provided by this paragraph.  Although no pay will be received for the amount of additional credit provided by this paragraph, the employee's pension amount will not be reduced because this period of additional credit is unpaid.


**ARTICLE XXI**

**Leaves of Absence**

1.        (a)        A non-probationary Employee may request an unpaid leave of absence of up to three (3) months' duration. No such request shall be denied arbitrarily, capriciously, or without good cause, based on the staffing or operational needs of the University or department. A leave of absence may not be granted to permit the Employee to accept employment with another employer without the written permission of the University. Such a leave of absence may be extended by the University for good cause, except the total time on the leave shall not exceed one (1) year.

          (b)        A non-probationary Employee unable to work due to illness or injury shall be granted a leave of absence without pay for the period the Employee is unable to work due to the illness or injury up to one (1) year; in unusual circumstances, such leave may be extended by the University.

          (c)        A non-probationary Employee shall be entitled to a leave of absence without pay for up to six (6) months for either (i) maternity leave beyond the period of the Employee's disability due to maternity, or (ii) paternity leave, or (iii) adoption leave commencing at the time of placement for adoption of a child under the age of 18 who is not a stepchild.

          (d)        FMLA.  Leaves of absence provided for in Article XXI, 1(a) include full time, intermittent and reduced schedule Caregiver leaves as defined in the federal and state Family and Medical Leave Acts (FMLA).  Leaves of absence provided for in Article XXI, 1(b), include full time, intermittent and reduced schedule leaves as defined in the FMLA.  For FMLA purposes, the leave year will begin on the Employee's first full day of leave.

(e)     Once a non-probationary Employee, absent from work due to illness, injury, maternity, paternity or caring for a relative and utilizing paid time off, is absent from work for more than thirty (30) calendar days, the Employee shall be considered on a leave of absence retroactive to the first day of absence.

2.     (a)     During an approved leave of absence, a Employee may utilize any vacation time or personal days the Employee accumulated prior to commencing the leave of absence, and, in the case of a leave of absence granted because of illness, injury, or pregnancy, the Employee also may utilize sick leave the Employee accumulated prior to commencing the leave of absence for the period the Employee is unable to work due to illness, injury, or disability due to pregnancy. In addition, Employees who are on a leave of absence under paragraph 1(c) may further utilize accumulated sick leave whether or not disabled. Except as provided in this paragraph and Article XVII Holidays, Section 4, a Employee on leave of absence shall not be paid by the University for any day during the period of leave.

(b)     The University will continue to pay its share of the premium for health and life insurance plans applicable to the Employee for the Employee and covered dependent(s) at the commencement of a leave granted pursuant to 1(b) or 1(c), and for three (3) months in the case of a leave for any other reason, provided the Employee pays any portion of the cost of such coverage the Employee is required to pay.

(c)     A Employee on leave shall continue to accrue service under the Yale Staff Retirement Plan.

(d)     A Employee on leave pursuant to 1(b) or 1(c) also shall accrue vacation, personal leave, and sick leave for use after the Employee has returned to work for at least thirty (30) days.  If an employee is being paid through sick, vacation or personal time during a leave pursuant to 1(b) or 1(c), and sick, vacation or personal time accrued while being paid during the leave, that accrued time is not subject to the 30-day waiting period.

(e)     Upon return from a leave of absence of three (3) months or less, or upon return from a leave of absence of more than three (3) months if the work unit has agreed to hold the Employee's position available for the duration of the Employee's leave, the Employee shall be returned to the position held by the Employee prior to the leave of absence, if that position still exists. Upon return from a leave of absence of more than three (3) months, upon return from a leave of three (3) months or less where the Employee's position no longer exists, or, when a Employee notifies the University that in either of the above circumstances he or she is ready to begin applying for a position to return to when the leave expires, the Employee will be considered laid off and will have the rights provided pursuant to paragraph Article XV (Layoff and Recall) of this Agreement.

(f)     For the purposes of leaves of absence granted under 1(b) and 1(c) above, the times expressed in 2(e) above shall be six (6) months.

(g)     A Employee shall accumulate seniority during any leave of absence.

(h)     A Employee on leave of absence shall not be eligible for the benefits provided by Article XXXv (Training and Education) of this Agreement.

(i)     A Employee on leave of absence shall be entitled to apply for job openings which are posted during the Employee's leave of absence. However, if the Employee is awarded the opening, the Employee will be expected to start work in the new position at the time desired by the Supervisor.

3.     The University's present policies on military leave and on military reserve duty pay shall be continued for the term of this Agreement.

4.     A Employee who incurs a break in seniority as a result of leaving the University for Child-rearing, and who desires to return to the University within two (2) years of the date of the child's birth, or within two (2) years of the time of placement for adoption of a child under the age of 18 who is not a stepchild, shall be entitled to other provisions set forth below in this paragraph but shall not be entitled to any of the other provisions of this Article or otherwise be considered to be on a leave of absence. Such Employee shall be treated solely for the purposes of applying for job openings pursuant to ArticleXIV (Internal Job Postings and Positions) of this Agreement as though the Employee were an Employee with seniority equal to the Employee's seniority at the time of the break in seniority. An Employee intending to use the right granted by this paragraph shall advise the University in writing of such intention within six

(6) months after the child's birth or, in the case of adoption, within six (6) months of the time of placement for adoption of a child under the age of 18 who is not a stepchild . If the Employee obtains a position through the job openings procedure provided by this Agreement, the Employee shall be given credit for all purposes for time worked before such child-rearing absence consistent with the definition in Article VII, (Definition of Seniority) paragraph 2.

5.     In the case of a Leave of Absence on account of an illness or injury covered by Worker's Compensation, after one (1) year's leave pursuant to paragraph 1(b) of this Article, the Employee shall cease to accrue seniority, but shall retain accrued seniority which may be exercised in the event the Employee becomes able and qualified to return to active employment prior to expiration of a five (5) year period following the end of the Leave of Absence or renewal thereof. Such an Employee may return to work in the same manner as a laid-off Employee pursuant to Article XV (Layoff and Recall) of this Agreement.

6.     University policies, procedures and forms concerning leaves of absence as they apply to Employees shall be consistent with the foregoing.


**ARTICLE XXII**

**Death in the Family**

1.      A Benefits Eligible Employee is entitled to be absent without loss of pay in the event of death in his or her immediate family from the day of death until no more than two (2) days after the day of the funeral inclusive, provided that such absence does not exceed three (3) days.  Pay for such absence shall be the employee's regular hourly rate multiplied by his or her regularly scheduled hours.  Paid time under this section shall count as time worked for purposes of computing overtime pay.  This provision will apply only in the case of death of the employee's spouse, domestic partner, child, mother, father, brother, sister, mother-in-law, father-in-law, grandparent, grandchild, or a person in an equivalent relationship.

2.      A Benefits Eligible Employee shall be entitled to unpaid bereavement leave required by the death of a member of the employee's immediate family as defined in paragraph 1, subject to the limits stated in Article XXI (Leaves of Absence).

**ARTICLE XXIII**

**Health Insurance**

1.      For the purposes of this article, an Employee is defined as a benefits-eligible employee as described in Article VI, Section 1 (a) and 1(b) of this agreement.  An Employee may participate in the Yale Health Plan (YHP) and The University shall contribute one hundred percent (100%) of the premium for such plan for an Employee and the Employee's dependents (as defined in the plan).

2.      (a) Each Employee employed before July 1, 2009, and each Employee employed for three (3) years or more may elect a Point of Service plan (Aetna Choice POS II) provided through Aetna and offered by the University in lieu of the plan cited in paragraph 1 of this Article.  If an Employee elects such option, the Employee will contribute each month for that month's coverage in accordance with the following schedules and provisions effective January 1, 2011:

| | |
|---|---|
| Single coverage | $111.00  per month |
| Two-person coverage | $163.00  per month |
| Family coverage | $198.00  per month |

Employee contributions for the period beginning January 1, 2012 and continuing through the end of this agreement will increase or decrease in the same percentage as any increase or decrease in the full premium of the plan.

(b) If an Employee elects any other Health Maintenance Organization (HMO) offered by the University in lieu of the above plans, and the subscription charge required for the Employee's participation in the HMO is greater than the amount required under paragraph 1, the University will pay each month in advance an amount equal to what it would have contributed under paragraph 1 above and the Employee will contribute an amount equal to the balance of the required premium.  In all cases

where payment by an Employee is required for participation, the University will deduct such payment from the Employee's wages upon receipt of a written authorization for such purpose from the Employee.  Monthly payments for the plans described  in paragraph 2 above will be scheduled on an appropriate weekly basis.

3.      An Employee's and the Employee's dependents' coverage under the applicable medical plans shall cease at the end of the month following the month in which the Employee ceases to be an Employee, except as provided in Article XV (Job Security) and except that a former Employee may convert the applicable group coverage to direct payment personal coverage where that option is available or  continue to participate in the applicable plan for up to eighteen (18) months after termination by paying the full cost of coverage. The University shall continue to contribute its share of the premium of the applicable plans for an Employee who is laid off for the month in which the Employee is laid off and for the following month, except as otherwise provided in Article XV (Job Security). An Employee granted a leave of absence may continue participation in the plans in accord with Article XXI (Leaves of Absence).  Employee premium contributions for the month following the month in which the Employee ceases to be an Employee will be deducted in the final month of employment.

4.      (a) The University shall make available to Employees a Dental Care Plan providing dental benefits at least comparable to those described by the Delta Dental Assistance Plan  in effect as of July 1, 2011. Employees who wish to have eligible dependents covered by the plan may elect to do so by contributing the cost of such additional coverage, but Employees who have completed eighteen (18) months or more of continuous service at the time of election are required to pay only one-half (1/2) of the additional cost for such dependent coverage. If the premium required for the Employee's participation in the Dental Care Plan is greater than the amount the University is obligated to contribute under this section, the University will deduct from the Employee's pay, upon receipt of a written authorization for such purpose from the Employee, the additional amount required for full payment of the premium.  The premium contribution rates in effect January 1, 2011 are as follows:

| Delta Dental Plan | January 1, 2011 Monthly Employee Cost (For employees with 18+ months of service) | January 1, 2011 Monthly Employee Cost (For employees with less than 18 months of service) |
| --- | --- | --- |
| Single | $0.00 | $0.00 |
| 2-Person | $19.46 | $38.92 |
| Family | $38.92 | $77.84 |

(b) The University shall continue to make available the CIGNA DMO dental plan to those Employees enrolled in that plan as of July 1, 2009. Employees who wish to have eligible dependents covered by the plan may elect to do so by contributing the cost of such additional coverage, but Employees who have completed eighteen (18) months or more of continuous service at the time of election are required to

pay only one-half (1/2) of the additional cost for such dependent coverage. If the premium required for the Employee's participation in the Dental Care Plan is greater than the amount the University is obligated to contribute under this section, the University will deduct from the Employee's pay, upon receipt of a written authorization for such purpose from the Employee, the additional amount required for full payment of the premium.  The premium contribution rates in effect July 1, 2011 are as follows:

| CIGNA Dental Plan | January 1, 2011 Monthly Employee Cost (For employees with 18+ months of service) | January 1, 2011 Monthly Employee Cost (For employees with less than 18 months of service) |
|---|---|---|
| Single | $0.00 | $0.00 |
| 2-Person | $12.33 | $24.65 |
| Family | $24.96 | $49.92 |

5.    (a)    All benefits provided by this Article are subject to the provisions of the applicable insurance policy or plan and are the same as provided to the Local 34 bargaining unit.  They are outlined in Appendix B of this agreement.

(b)    The benefits and their terms and conditions  including contribution rates provided by this Article will change during the course of this Agreement if such change also applies to the Local 34 bargaining unit.

**ARTICLE XXIV**

**Retirement**

1.  The University will maintain the Yale University Retirement Plan for Staff Employees in full force and effect for Employees during the term of this Agreement, subject to the currently applicable eligibility and other provisions of such plan and to any amendments necessary to conform the provisions of such plan to the provisions of this Agreement.

2.  The Retirement Plan shall provide that:

    a.  A Employee who retires on or after January 1, 2011, shall have his or her retirement income under the Yale Staff Retirement Plan calculated using the following schedule of multipliers:

SPFPA & YALE UNIVERSITY

| Portion of Employee's Base Pre-Retirement Salary | Multiplier |
|---|---|
| Up to $40,000 | 1.5% |
| $40,001 to $73,000 | 1.4% |
| Over $73,000 | 1.3% |

The tier definition amounts will be adjusted pursuant to the plan document.

b. For Employees who retire at age 55 or older with thirty (30) years of credited service or more, the actuarial reduction of benefits for retirement prior to age 65 shall be 2% times the number of years below age 65. For Employees who retire with twenty-five (25) years or more of credited service, there shall be no reduction of benefits for years after the 60th birthday.

c. If a Employee who is vested in the Yale Staff Employee's Retirement Plan dies before age 55 and is survived by spouse and/or minor children, there shall be no discount factor in the benefit and the survivors benefit will be paid beginning immediately to spouse and/or minor children which would have been provided under the surviving spouse option had the deceased participant reached age 55. The health insurance benefits received by the spouse and/or minor children shall continue until the earlier of either two years or until the spouse becomes eligible for equivalent coverage.

d. The University will provide a supplemental retirement program, for Benefits Eligible Employees age 45 and over with at least 5 years of service, a dollar-for-dollar match of employee contributions up to 4% of the annual salary of the employee and for any other employee with at least 2 years of service, a dollar-for-dollar match of employee contributions up to 2% of the annual salary of an employee.

3. The benefits and their terms and conditions including contribution rates provided by this Article may change during the course of this Agreement if such change also applies to the Local 34 bargaining unit.

**ARTICLE XXV**

**Retiree Health Insurance**

1. The University will provide the following benefits for an Employee with ten (10) years of credited service who both retires from the University and commences receiving benefits from the Yale Staff Retirement Plan: (i) a life insurance policy in the face amount of $5000; and (ii) if the retired Employee was a participant in the University's group health insurance plans, or in a sponsored HMO,

or in the Yale Health Plan at the time of retirement and is by virtue of his or her age ineligible for Medicare, the University shall contribute all or a portion of the premium for an individual contract covering the Employee as scheduled below:

    a. Retirees and their spouses under age 65 at the time of retirement can continue to participate in the same medical plans as an active employee. The University will contribute 100% of the same amount that it would contribute if the staff member continued to be employed by the University.

    b. Retirees and their spouses over the age of 65 at the time of retirement must enroll in Medicare Part A and B. The University provides a Medicare Supplement and a Major Medical Plan, in which the University and the retiree share the cost of the plan. A Medicare Risk HMO is also available at no cost to the retiree.

    c. Retirees and their spouses over the age of 65 will also be eligible to receive a reimbursement in the amount of 100% of the premium paid for their Medicare Part B insurance. Proof of enrollment in Medicare Part B is required to initiate this payment.

2. For employees who retire from the University after January 1, 1998, a new Medicare Risk HMO will become the standard, fully subsidized plan for retirees at age 65. A Medicare HMO is a managed care plan with a network obtained from the professionals and facilities that are part of the plan. Retired employees electing the Medicare Risk HMO are not eligible to use the Yale Health Service Center.

3. The Medicare Supplemental package, which is a fee-for-service plan allowing for unlimited choice of provider, will continue to be an available option. For 2003-2004, the plan will be offered at a monthly premium of $40.99 for the retiree and $40.99 for the spouse. Premiums will increase annually by the same percentage as the premium for the Medicare B, Medicare Supplement and Major Medical plan.

4. For retirees who were employed after January 19, 1992 and with 10 but less than 20 years of credited service on the date of retirement, the University will contribute 80% of the same amount that it would contribute if the Employee continued to be employed by the University. At age 65 the University will contribute toward the cost of either the Medicare Supplement or the Medicare Risk HMO.

5. The benefits and their terms and conditions including contribution rates provided by this Article may change during the course of this Agreement if such change also applies to the Local 34 bargaining unit.

**ARTICLE XXVI**
**Life Insurance**

1.  Effective at the start of the month following the month in which a benefits-eligible employee completes the probationary period, the University will provide a $10,000 life insurance benefit, at no cost to the employee.

2.  A benefits-eligible employee may elect to purchase term life insurance coverage equal to either one (1), two (2), three (3), four (4) or five (5) times the employee's annual salary. During the first sixty (60) days of employment, life insurance up to two (2) times annual salary may be purchased without a physical examination. Thereafter, the insurance company may require that the employee take and pass a physical examination to be eligible to purchase this insurance.

3.  The salary of a full-time employee who dies shall be continued for what would have been the Staff Member's workdays, holidays, and recess days falling within thirty (30) days after the date of the Staff Member's death. This amount and any unused and unforfeited vacation and sick time shall be paid to the Staff Member's spouse, estate, or other beneficiary designated by the Staff Member to receive such payment.


**ARTICLE XXVII**
**Long Term Disability**

1.      The University will continue its present long term disability program for Benefits Eligible Employees during the term of this Agreement. The University may change the carrier used to provide this benefit or may self-insure the benefit; provided, however, the University will not diminish the benefits or unduly complicate the claims handling procedures except pursuant to agreement with the Union.  The University will meet with the Union to discuss any changes pursuant to the above at least thirty (30) days prior to implementation.

2.      If a Benefits Eligible Employee who is on a Leave of Absence or any renewal thereof pursuant to Article XXI (Leaves of Absence) of this Agreement begins to collect under the Long-Term Disability Policy, the employee shall continue to be covered by such Leave of Absence or renewal until its expiration except that the employee shall no longer accrue vacation, personal leave and sick leave. After expiration of such leave of absence or extension, the employee shall cease to accrue seniority, but shall retain accrued seniority but no other benefits, rights, or privileges of employment. Such accrued seniority may be exercised in the event the employee becomes able and qualified to return to active employment prior to expiration of a five (5) year period following the end of the Leave of Absence or renewal thereof. Such an employee may return to work in the same manner as a laid-off employee pursuant to Article XV of this Agreement.


**ARTICLE XXIX**
**Licensing**

As a condition of employment, employees are required to hold the Connecticut license for Security Officer.

Incumbents as of the date of ratification are required to attain the license within one year of ratification.

SPFPA & YALE UNIVERSITY

a)   The University will provide the training necessary for attainment of the license.

b)   The University will reimburse officers for their initial application and license fees.

c)   Failure to qualify for the license are grounds for termination.


**ARTICLE XXX**
**UNIFORMS AND EQUIPMENT**

1.   As soon as is practical after being hired, an employee will be issued uniforms and equipment in accordance with the Department's "Initial Issue of Uniforms" list.  Annually thereafter non-probationary employees may use a clothing allotment for the purpose of uniform replacement. Employees may use the allotment to purchase authorized items from the University's approved vendors.

2.   The Department will supplement an employee's initial issue in the event of a change in assignment that requires different uniforms.

3.   Employees will be required to maintain their clothing and equipment in a manner deemed acceptable by Department standards.

4.   The Department will issue replacement uniform items in the event it changes uniform requirements.

5.   The Department will replace uniforms and equipment that are damaged or destroyed in the line of duty beyond expected normal wear and tear.

6.   Uniforms and equipment remain the property of the Department and must be returned when replacements are obtained and must be returned when separating from employment.

7.   Annual clothing allotments are effective July 1 of each contract year according to the following schedule:

   a.   Security Officer, Security Communications Officers, Cultural Properties:       $600

   b.   Security Communications Officers, CASO and Transit:       $460

   c.   Officers regularly scheduled for fewer than 20 hours per week will receive one-half of the above amounts.


**ARTICLE XXXI**
**Scholarship Program for Sons and Daughters**

The University shall continue in effect the Scholarship Program for Sons and Daughters for members of this bargaining unit to the same extent and at the same levels as it continues in effect for other University employees.  It shall include full-time attendance at a Community College.

## ARTICLE XXXII
### Employee Assistance Program

The University shall continue to provide an Employee Assistance Program. This plan will not be operated at the Yale Health Plan. It will be available to all Employees without charge.

## ARTICLE XXXIII
### Jury Duty

An Employee who loses work because the Employee is required to serve on a jury shall be paid the difference between the jury duty pay (excluding any travel allowance) and the Employee's straight-time compensation for the work time lost due to serving on the jury. A Employee released from jury duty at a time which permits the Employee to be at work for at least one-half (1/2) the Employee's scheduled hours shall be expected to offer to report for work for the balance of the Employee's workday.

## ARTICLE XXXIV
### Mortgage Loan Program

The University will continue its present mortgage loan program (although it may change the providing bank or financial institution) for the term of this Agreement.

## ARTICLE XXXV
### Training and Education

1.      The University shall continue the following policies and programs: Tuition Assistance for Non-Yale Courses or Degree Programs; Yale Special Student Program and Reduced Tuition for Yale Courses; Auditing Courses at Yale (Non-Credit Courses). The maximum annual reimbursement under the Tuition Assistance for Non-Yale Courses or Degree Programs is  $4,600 and will increase each year as determined by the University's plan for other non-exempt employees.

Except that (a) otherwise eligible less than full-time Employees who have completed at least six (6) months' service shall be eligible to participate in (i) the Tuition Assistance for Non-Yale Courses or Degree Programs (with the amount provided less than full-time Employees to be a pro-rated benefit equal to the Employee's regular work hours divided by 40) and (ii) the Auditing Courses at Yale (Non-Credit Courses) Program; (b) otherwise eligible less than full-time Employees shall be eligible to

participate in the Yale Special Student Program and Reduced Tuition for Yale Courses; and (c) the $50 charge for Auditing Courses at Yale (Non-Credit Courses) is eliminated.

2.      When new technology is introduced, the University will provide the Employees assigned to utilize such technology training during work time appropriate to the new technology.

3.      Upon request, the University will seek to arrange for reasonable accommodation (which may include special training) for otherwise qualified Employees with disabilities in order to enhance their promotional or transfer opportunities.

4.      Each full-time Employee shall receive upon request a guarantee of no less than 30 hours of release time per year for skill-based training applicable to the Employee's job family or closely related job family at no cost to the employee for such Yale or Yale-sponsored training.  Less than full-time Employees shall receive a pro-rated benefit equal to regular work hours divided by 40.  Release for such training on a given date or dates is subject to reasonable operational needs.


**ARTICLE XXXVI**
**NO STRIKE/NO LOCKOUT**

Section 1.  During the term of this Agreement the Union and the members of the bargaining unit agree there shall be no strikes or work stoppages of any kind including, but not limited to, slow-downs, speed-ups, sick-outs, work to rule, secondary boycotts, strikes in sympathy, or any other concerted action resulting in any cessation of work by any other University employee or any interruption in the operation of the University, regardless of the reason for any such action.  No officer or representative of the Union shall authorize, initiate, instigate, aid or condone any such activities and the Union shall take appropriate positive action to prevent or to stop such activities in which members of the bargaining unit may be engaged.  Immediate individual written notice to employees involved of their obligation under this Section, with copies of such notice served on the University, shall constitute appropriate positive action.  Failure to comply with the terms of this Article may subject the employee(s) to immediate discipline, up to and including discharge.

Section 2.  During the term of this Agreement the University will not lockout any employee in the bargaining unit.


**ARTICLE XXXVII**
**DURATION OF AGREEMENT**

Section 1.  This Agreement shall be effective November 1, 2011, and shall remain in effect until midnight on January 18, 2015 and from year to year thereafter unless terminated in accordance with the provisions of Section 2 of this Article.

SPFPA & YALE UNIVERSITY

Section 2. Either party may terminate this Agreement as of midnight, January 18, 2015, or on any January 18 thereafter. If either party desires to exercise this right, it shall give the other party written notice not less than ninety (90) days prior to the October 30 in question.  The parties agree to meet within a reasonable time after the receipt of such notice to consider the negotiation of a new Agreement.

Section 3. If this Agreement is terminated by either party, and the parties have not reached a new Agreement by the expiration date of this Agreement, the arbitration procedure provided in Article XIII (Grievance Procedures) of this Agreement shall not be available with regard to grievances based upon action taken by the University after the expiration date of this Agreement, unless the parties have specifically agreed to extend the entire Agreement for a definite period or specifically agree in writing to arbitration of a particular grievance.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed this _2nd_ day of _November_, 2011.

**Security, Fire and Police**
**Professionals of America**

By

_____
Thomas Hearn
Vice President, Local 502

_____
Michael M. Rubino
Committeeperson, Local 502

_____
Judith Rivera
Committeeperson, Local 502

_____
Albert D. Krebel
Committeeperson, Local 502

**Yale University**

By

_____
Janet E. Lindner
Associate Vice President for Administration

**Letter 1**

**Overtime Procedure**

The Department reserves the right to determine the required staffing needs of each shift/assignment and to fill those needs, if desired, on a non-overtime basis if possible.   The Department reserves the right to determine which assignments will not be filled.

When the department determines that it will fill an assignment on an overtime basis, it shall attempt to distribute overtime opportunities equitably.  The department shall establish two types of overtime hiring procedures – Voluntary and Order-in.

Employees of this unit are considered essential staff, therefore can be ordered in to fill necessary positions.

### *Exceptions*

- No employee will be ordered into work or held over to work if such action results in the employee working more than sixteen (16) consecutive hours.

- No employee will be ordered into work or charged with voluntary overtime when he/she is out of work for the following reasons:

  - Approved Sick Time

  - Approved Leave of Absence

  - Bereavement

  - Jury Duty

  - Personal Day

  - Vacation Day

### *Voluntary Overtime*

Within each job classification (CASO, Transit Dispatch, Cultural Properties & Security Officer), the Department will establish a list of volunteers who wish to be called for overtime assignments.   The list will be established one time per year, resulting in one voluntary overtime period.   Employees wishing to be called for overtime assignments must 'opt in' to this procedure prior to the start of the period or they will not be offered any voluntary overtime assignments during that period.   All employees will be allowed to opt in twice per year (6/1 & 12/1), however employees can opt out at anytime.  They will however have to wait for one of the two opt in periods.

These employees will provide the Department with one valid telephone number (contact point) to be used for this purpose.  It is the responsibility of the employee to notify the department of any changes to the contact number.

At the onset of the period, a list will be established using the employee's initial departmental hiring date.  The employee on the list with the most seniority will be at the top of the list, followed by the next most senior employee, etc....  In cases where the employees have the same amount of seniority, the employees will be listed by a lottery in which a union member will be in attendance during selection.

Once the department determines that it will fill an assignment on an overtime basis, the person at the top of the list will be offered the assignment using the telephone number (contact point) provided by the employee.   Once offered the opportunity, the employee will either accept or decline the opportunity.  In either case, the employee will be credited with the amount of hours offered.  If, for example, the assignment offered was an eight (8) hour assignment, the employee would be credited with eight (8) hours. If after five (5) minutes contact is not made with the employee because there is no answer, an answering machine or voice mail is received or there is a busy signal, the employee will be credited with the amount of hours that would have been offered and the next person on the list will be contacted.

After the initial time through the entire list, the department will re-establish the list with the person at the top having the least amount of hours offered, descending to the person with the most amount of hours offered.  Subsequent assignments will be made first to the person with the least amount of hours offered and descending from there.

If the employee that accepts the overtime assignment does not report for the assignment , could result in disciplinary action.

### *Order-In*

The department understands that ordering-in an employee is the least desirable way to fill an assignment.  However, the department also recognizes that once the need is established, the assignment will be filled.

Within each job classification (CASO, Transit Dispatch, Cultural Properties & Security Officer), the Department shall establish a list of all employees falling into each category.  Employees may only be listed under one category.  The list shall be established one time per year, resulting in one order-in period.

All employees are required to provide the department with a telephone number (contact point).  It is the responsibility of the employee to notify the department of any changes to the contact number.

At the onset of the period, a list will be established using each employee's initial departmental hiring date.  The least senior employee will be at the top of the list, followed by the next least senior employee, etc....  In cases where the employees have the same amount of seniority, the employees will be listed a lottery in which a union member will be in attendance during selection.

When the department determines that an assignment must be filled and is unable to fill it with a volunteer, the employee with the least amount of order-in hours will be contacted and ordered into work.  After the initial time through the entire list, the department will re-establish the list in ascending order, with the person with the least amount of order-in hours at the top of the list.

For purposes of this Order-In section, the department may contact the employee any way necessary, to include but not limited to telephone, radio or home visit.

If an employee repeatedly refuses order-in overtime it  will result in disciplinary action.

### *Hold Overs*

It may become necessary to hold over employees currently on duty from one shift to the next shift while attempting to fill an assignment though use of the voluntary list.  When such hold-over is necessary, the department will hold over the employee who is working with the least amount of 'order-in' hours.  These hours will be counted as hours ordered-in.

For example, at 8:15pm Security Officer "A" notifies the department that they are sick and will be using sick time for the upcoming 10:30pm – 6:30am shift.  If the department determines that the assignment must be filled on an overtime basis, the voluntary overtime list will be used.  If, by 10:30pm the department has not filled the assignment, the person on-duty with the least amount of order-in hours will be held-over until the vacancy can be filled.  Subsequently, if a person on the voluntary overtime list is contacted, accepts the assignment, and arrives at work at 11:30pm, then the employee who was held over is credited with one hour of Order-In time.  If no volunteers accept the assignment, the person on hold-over shall be required to stay for the duration of the assignment and credited with the appropriate amount of order-in hours.

**Letter 2**

**Shift Coordinator Program (SCP)**

**Timeline**

The Department will pilot the Shift Coordinator Program for a period of one year.   After conclusion of the pilot period, the Department and the Union will confer to discuss the performance of the program. The Department will have the sole discretion to determine if and how the program will continue past the end of the pilot.

**Purpose**

The SCP is designed to help identify, develop, and prepare officers for potential upward mobility within the department.  Shift Coordinators will help provide coverage in the temporary absence of a supervisor, supplement staffing during critical events, and provide general training to new officers.

**Criteria for Selection**

- Minimum of two (2) years as a benefit-level Security Officer in the bargaining unit.

- No discipline in their file, defined as a Written Warning or above, in the thirty-six months leading up to the application deadline date.

- Shift Coordinators may make recommendations for discipline; however, they are not authorized to administer discipline.

**Application Process**

- Officers will be chosen with the understanding that they may be required to work shifts other than their regular hours/shifts.

- Officers must apply to the position.  A resume plus a letter of application will be required.

- Management will solicit applicants via intra-department posting via roll call announcements and bulletin board notices.

- Applications will be solicited for a minimum of two (2) weeks

- Applicants will be interviewed by a panel selected by the Director, or his designee.  Subsequent interviews may be conducted, at the discretion of the Director.

**Training and Assignment**

Management will work with the Learning Center to determine appropriate levels of training.  The goal is to provide both officer-level training as well as initial first line management training.

SPFPA & YALE UNIVERSITY

- Newly appointed Shift Coordinators will be provided with one-on-one training with supervisors on each of the three (3) shifts.

- These positions serve at the discretion of the Director.  If, for any reason, the Director determines that a Shift Coordinator is not performing at the required level, he or she will be removed from the program and revert to the employee's normal assignment.  Management will not make such changes in a capricious manner.

<u>Compensation</u>

Security Officers will be compensated the amount of $1.00 per hour for hours when they are deployed as Shift Coordinators.  Management will determine when Shift Coordinators are needed and will deploy accordingly.

**APPENDIX A**

**FEDERAL MEDIATION & CONCILIATION SERVICE UNITED STATES GOVERNMENT**

<u>Grievance Mediation Agreement</u>

The undersigned hereby request the assistance of the FMCS in the attempted resolution of the dispute between them today. They understand that mediation is a voluntary process described more fully in the attached *Summary of the Mediation Process*. Further, the undersigned agree as follows:

1. Any time limits in the parties' labor agreement will be extended as necessary to permit the grievance to proceed to arbitration should the mediation be unsuccessful.

2. Proceedings before the mediator will be informal and rules of evidence do not apply. The mediator has no authority to compel resolution of the grievance. No recording or stenographic or other record of meetings will be made and the mediator will issue no written recommendations or conclusions.

3. All statements by the parties, participants or the mediator during the mediation process, and any documents created for or during these proceedings, are inadmissible and not discoverable for any purpose whatsoever, in any pending or subsequent judicial or other proceeding.

4. The undersigned will not subpoena the mediator or anyone else employed by FMCS to testify for any reason, nor to subpoena documents created for or during the mediation. The FMCS and the mediator are held harmless of any claim of damages arising out of the mediation process to the fullest extent permitted by law.

5. The undersigned shall not rely on, nor introduce as evidence in any proceedings, any views, comments or suggestions made by any party or participant with respect to a possible settlement of the dispute, any admissions made by another party or participant in the course of the mediation proceedings, or any proposals, opinions, or comments of the mediator. It is understood that FMCS policy is such that the mediator's notes and records of the mediation content, if any, are promptly destroyed upon conclusion of the mediation.

6. The obligations imposed by this agreement are in addition to, and do not supersede, any obligations imposed by applicable state or federal laws regarding mediation confidentiality.

_____        _____

Name/Title                              Organization

_____        _____

Signature                               Date

SPFPA & YALE UNIVERSITY

Appendix B

Health Insurance Schedules

# Medical Plan Summary

Appendix B
SPFPA

| Job class | Security/SPFPA | | |
|---|---|---|---|
| Medical Plans | YH | Aetna | Aetna Out-of-Network |
| Annual deduc | None | None -In | |
| Out-of network | None | | $250=S $500=2-P $750=F |
| Out of pocket max | None | | $1000=S $2000=2-P $3000=F |
| ER | $0 | $50 | $50 |
| Inpatient Hospital | $0 | $0 | 30% |
| Outpatient Surgical | $0 | $0 | 30% |
| Office visit PCP/Spec | $0 | $5 | 30% |
| Routine Physical | $0 | $5 | Not covered |
| Eye Exam | $0 | $5 | 30% |
| Physical Therapy | $0 | $5 | 30% |
| Chiro | 12 visits/yr, $50 max reimbursemt | $5 | 30% |
| Infertility | $20,000 University lifetime max | $20,000 University lifetime max | $20,000 University lifetime max |
| X-Ray/Lab | $0 | $0 | 30% |
| Prescription generic/brand | $5 Generic $20 Pref Brand $30 Non-Pref Brand | $5 Generic $20 Pref Brand $30 Non-Pref Brand* | 80/20 w/deduc |
| Mail order (more than 31 day supply, but less than 100 day supply) | None | $5 Generic $20 Pref Brand $30 Non-Pref Brand* | None |

All cost sharing is
relative to employee,
unless otherwise noted

## Dental Plan Comparison Summary

| Job class | Security/SPFPA | |
|---|---|---|
| *Dental Plans* | *Delta* | *CIGNA* |
| Calendar Year Max | None | None |
| Annual deductible | None | None |
| Orthodontic | None | In-Network only |
| Preventive & Diagnostic | 100% of MAA | In-Network only |
| Basic Services | 80% of MAA | In-Network only |
| Major Services | 50% of MAA | In-Network only |
| | Crowns & Inlays | |
| Prosthodontics | None | In-Network only |

*MAA= Maximum allowable amount

106-40_App_A_Benefit_Summary.xls
Dental

All cost sharing is
relative to employee,
unless otherwise noted

11/2/2011

## Other Benefits Summary

Appendix B
SPFPA

| Job class | Security/SPFPA | |
|---|---|---|
| **Life Insurance** | | |
| *Non-contributory* | $10,000 | |
| *Contributory/Supp-lemental* | Up to 5 x annual earnings or Flat $50,000 | |
| **Long Term Disability(Non Contributory)** | $150,000 | 60% up to $7,500 |
| **Paid Time Off (PTO)** | | |
| *Vacation Days* | F/T  12  2yrs or > =22 | |
| *Sick Days* | 12 per fiscal year | |
| *Personal Days* | 4 per FY pre 7/2009 | |
| *Holidays* | 8 observed | |
| *Recess Days* | 6 Observed | |

*\* All days are per fiscal yr, except for Holidays*

*Variance within grouping*

All cost sharing is
relative to employee,
unless otherwise noted