UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

ANDREW KLOTSCHE, )
)
    Plaintiff, )
)
v. ) Case No. 3:13-cv-955
)
YALE UNIVERSITY and )
INTERNATIONAL UNION, SECURITY, )
POLICE AND FIRE PROFESSIONALS OF )
AMERICA, LOCAL NO. 502, )
)
    Defendants. )

**OPINION AND ORDER**
(Docs. 36, 38)

    Plaintiff Andrew Klotsche is employed as a security officer by Yale University. He is a member of the International Union, Security, Police and Fire Professionals of America, Local No. 502 (the "Union"). He brings this action against his employer and the Union under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. He seeks damages arising from a one-day unpaid suspension imposed by Yale for violations of the rules governing his employment. He alleges that the disciplinary measures imposed upon him violate both the provisions of the collective bargaining agreement (CBA) and the Union's duty of fair representation. (*See* Am. Compl., Doc. 17.)

**Facts**

    The following facts are drawn from the amended complaint, from the defendants' statement of undisputed facts which were admitted by the plaintiff, and from Mr. Klotsche's deposition transcript. There are few disputed facts. When a fact is disputed, the court has accepted Mr. Klotsche's version of events. The court cites paragraphs from Yale's Statement of

Material Facts ("SOF") (Doc. 37), and from the Union's statement (Doc. 38 at 13–16). All statements were admitted, sometimes with disclaimers. (Doc. 39-1.)

Plaintiff Andrew Klotsche has been employed since 2008 as a Yale University security officer. (Klotsche Dep. 7:24, Doc. 38-2.) His duties include patrolling university properties, responding to lock-out requests and alarms of all kinds, and making certain that gates and lights are functioning. (Klotsche Dep. 9:8–13.) Maintaining a visible security presence on the Yale campus is an important part of the job. (*Id.*)

The CBA contemplates a progressive discipline structure.[1] The lowest form of discipline is a verbal warning. (Klotsche Dep. 91:9–14.) The next level of discipline is a written warning. (*Id.* at 92:13–14.) After a written warning, the next level of discipline is a suspension. (*See id.* at 93:9–12.) The CBA states that "[d]iscipline older than eighteen (18) months does not serve as a basis for progressive discipline, except in cases of serious misconduct . . . ." (Doc. 49 at 14.) Nothing in the CBA explicitly requires Yale to treat each infraction separately for the purposes of imposing discipline.

Mr. Klotsche's disciplinary history at Yale prior to the events giving rise to this case is as follows:

1. 2009 – counseled for being in possession of the master set of keys to Pierson College in violation of department policy.
2. December 2010 – supervisor found Mr. Klotsche reading textbooks and taking notes when he should have been working.
3. April 2011 – counseled for congregating with fellow security officers.

---

[1] In compliance with the court's Entry Order dated January 27, 2017 (Doc. 48), Yale has filed a copy of the CBA (Doc. 49).

4. September 2011 – verbal warning for being outside the location he was assigned to patrol.

5. August 2011 – counseled concerning proper bike attire.

6. January 9, 2013 – supervisors found him in the basement of Branford College sitting at a table with his jacket and duty belt removed. He had a textbook open and was writing on a pad. He was in possession of the keys to the residential college in violation of policy. Mr. Klotsche told his supervisor that he was not concerned about being "written up" because he would only receive counseling or a written warning.

7. January 11, 2013 – supervisor found him in the basement of Jonathan Edwards College when he should have been providing a visible, uniformed presence. He was also in possession of keys in violation of policy.

8. February 21, 2013 – Plaintiff received a one day suspension without pay as a result of the conduct on January 9 and January 11, 2013.

(Yale SOF ¶¶ 3–11.) No written warnings were issued for the conduct on January 9 or January 11, 2013, but Mr. Klotsche concedes that, since he already had a verbal warning from 2011, a written warning could have issued for the January 9 conduct, and if that had been done, then a suspension could have issued for the January 11 conduct. (*See* Klotsche Dep. 92–94.)

On February 27, 2013, Plaintiff submitted a grievance to the Union objecting to his suspension. The grievance was provided to Yale University on March 14, 2013. The grievance was provided to the University beyond the time permitted by the collective bargaining agreement in place between the Union and Yale University. (Yale SOF ¶ 13; Union SOF ¶¶ 2–4.) The stated basis for the grievance was: "Failure to follow progressive discipline on behalf of

University and selective [discipline] on behalf of the University." (Doc. 38-1.) The grievance asserts that Yale University violated the following provisions of Article XI of the contract:

Section 1(a): "No non-probationary security officer may be disciplined or discharged except for just cause."

Section 4: "Neither the University nor the Union shall apply the provisions of this agreement in an arbitrary, capricious or discriminatory manner."

(Id.) The relief requested was replacement of the "unpaid suspension" with a verbal warning for failure to request a work break. (Id.)

On March 18, 2013, Mr. Klotsche met with representatives of the Union and Yale University. Yale's representative agreed to hear the grievance despite late filing. The parties discussed the merits of the grievance. Mr. Klotsche explained his side of the events. Yale's representative did not grant Mr. Klotsche any relief from his suspension. (Union SOF ¶ 7.)

The Union appealed the case to the next stage ("Step 3"). The Union was represented at the meeting by Harold Trigg, who was its "Region 1 Director." The Yale representative stated that it had considered the grievance despite the late-filing and denied it because Mr. Klotsche had admitted that he committed rules violations on January 9, 2013 and January 11, 2013 and that Yale had followed the progressive discipline process. (Trigg Decl. ¶¶ 4–6, Doc. 38-3.) The Union then withdrew the grievance on the ground that it had "no chance of success before an arbitrator. (Id. ¶¶ 7–8.)

## Analysis

I. **Summary Judgment Standard and Applicable Law**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine dispute of material fact, the court "construe[s] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). Initially the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion has been made, the burden shifts to the nonmoving party to set out specific facts showing a genuine issue for trial. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).

"Section 301 of the LMRA governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 n.3 (2d Cir. 2001). To establish his "hybrid" § 301/duty-of-fair-representation claim, Mr. Klotsche must prove: "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-à-vis the union members." *Id.* at 178. A breach-of-fair-representation claim has two elements: (1) the union's "conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith"; and (2) there was "a causal connection between the union's wrongful conduct" and the plaintiff's injuries. *Id.* at 179 (internal quotation marks omitted).

II.   **Claims Against Yale University**

The facts in this case demonstrate that Yale University did not violate the terms of the CBA. The employer imposed progressive discipline. Mr. Klotsche repeatedly retreated into the basement regions of the Yale residential colleges in order to study for classes. He also kept the master keys to the colleges in his possession in violation of department policy. He was

counseled about the rules regarding keys in 2009, found by his supervisor reading on-duty in 2010, received a verbal warning for being out of place in 2011, and found reading in the basement while on duty on January 9, 2013. On that occasion he was openly dismissive about any risk of suspension because he believed he would only receive a warning. Three days later on January 11, 2013, he was found in another college basement while expected to be out on patrol. These two violations resulted in the suspension.

It is clear from the undisputed chronology that Mr. Klotsche was counseled and verbally warned in advance about his practice of disappearing into the college basements for his own purposes when he was expected to be out and visibly on patrol. These activities did not occur on break time, and Mr. Klotsche at his deposition sought to minimize his violations as forgetting to report his breaks to his supervisors. (Klotsche Dep. 19, 26.) On the record developed at Mr. Klotsche's deposition and through the admitted statements of facts, it is clear that Yale University imposed the one-day suspension after several warnings from Mr. Klotsche's supervisors.

The court rejects Mr. Klotsche's theory (Doc. 39 at 1; Doc. 39-1 at 4, ¶ 2) that discipline was not "progressive" because he did not receive a written warning before his suspension. He had received a verbal warning in September 2011 for being outside the location he was assigned to patrol. On January 9 and 11, 2013—before 18 months had elapsed from the September 2011 verbal warning—he committed two additional, separate infractions. The CBA does not explicitly require that each infraction be treated separately. *Cf. Mitchell v. N. Westchester Hosp.*, 171 F. Supp. 2d 274, 280 (S.D.N.Y. 2001). Because Mr. Klotsche had received a verbal warning less than 18 months before his January 2013 infractions, and because he committed two separate

6

infractions in January 2013, Yale's decision to impose a suspension was consistent with the CBA's progressive discipline structure.

Similarly, the undisputed facts demonstrate that Mr. Klotsche was disciplined for just cause. The record demonstrates that twice within two days he was found out of place. On the January 9 incident, he was reading in the basement, which was the same conduct that his supervisor discovered in December 2010. Three days later he was found in another college basement while he was supposed to be visible and on patrol. On both occasions he was in possession of the master keys to the college where he was located. The record shows the same two violations of university policy within two days. The resulting suspension was clearly supported by good cause.

Mr. Klotsche has provided no record evidence to support his claim that the discipline was imposed in an arbitrary, capricious or discriminatory manner. Neither at his deposition nor in his response to the summary judgment motion has he documented his claim that he was unfairly singled out for carrying the keys. (Klotsche Dep. 56–63.) The issue of the keys, moreover, was only part of the reason for his suspension. His practice of retreating to the college basements for his own purposes while he was expected to be on patrol was obviously a serious violation of the rules. The memorandum filed in response to the defendants' motions for summary judgment states in general that employer's rules, orders and penalties must be imposed evenhandedly and without discrimination, but he provides no factual support for a claim that the employer tolerated similar violations by other employees.

III. **Claims Against the Union**

The claims against the Union fail for similar reasons. Mr. Klotsche was obviously subject to progressive discipline. It is equally obvious that he broke the same rules for which he

had previously received warnings twice within three days. The Union filed his grievance and represented him at two steps of the grievance procedure. There is no evidence that the late filing of the grievance by the Union representative affected the outcome since the University considered the merits of the grievance at Step Two and Step Three. Faced with a losing proposition—and failing to persuade the employer at two levels—the Union acted permissibly in declining to pursue the matter to arbitration. In response to the summary judgment motion, Plaintiff has failed to come forward with record evidence which would support a claim of unfairness, discrimination, or other misconduct by the Union.

## Conclusion

The court GRANTS the motions for summary judgment filed by Defendants Yale University and International Union, Security, Police, and Fire Professionals of America, Local No. 502 (Docs. 36, 38).

Dated this 7 day of March, 2017.

/s/ Geoffrey W. Crawford
Geoffrey W. Crawford, Judge
United States District Court